Beverly **LAKITS**,

v.

**Officer Joseph YORK, et al.**

**Civil Action No. 02–8645.**

United States District Court,
E.D. Pennsylvania.

April 23, 2003.

---

John P. Karoly, Jr., Karoly Law Offices, P.C., Allentown, PA, for Plaintiff.

Sheila E. O'Donnell, Wright & O'Donnell, PC, Conshohocken, PA, for Defendants.

### MEMORANDUM

BAYLSON, District Judge.

Plaintiff Beverly Lakits (herein "Plaintiff") brings this civil action against Officer Joseph York ("York"), Police Chief Laird Brownmiller ("Brownmiller"), and the Borough of Northampton ("the Borough"), alleging civil rights violations under 42 U.S.C. § 1983 (Count I), as well as three state law tort causes of action (Counts II–IV). Presently before this Court is Defendants' Motion to Dismiss Under Rule 12(b)(6), seeking dismissal of various claims in the Complaint for failure to state a claim upon which relief can be granted. In addition, Defendants move this Court, pursuant to Rule 12(f), to strike from the Complaint any reference to a prior, unrelated lawsuit involving Defendant York. For the reasons which follow, Defendants' Motion will be granted in part and denied in part.

## I. Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *See Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *See Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

## II. Allegations of the Complaint

Plaintiff alleges the following facts, which, for the purpose of deciding the instant motion, will be read in the light most favorable to Plaintiff. On or about November 26, 2000, at around 10:00 p.m., Plaintiff was driving her car along a road in the Borough of Northampton, when she noticed a police car in her rear view mirror with its overhead lights flashing, signaling her to pull over. *See* Complaint ¶ 12–14. Defendant York emerged from the police vehicle and approached Plaintiff's car. Plaintiff recognized Officer York from when she had worked at a sandwich shop, at which York was a frequent customer. The Complaint suggests, without supplying any details, that "Plaintiff had also complained to Defendant Brownmiller, as Defendant York's superior officer, about Defendant York's actions in the past." *Id.* ¶ 17.

As York reached Plaintiff's vehicle, Plaintiff asked "What did I do?" *Id.* ¶ 18. York told Plaintiff she was speeding and driving recklessly, and that she failed to make a proper stop at a stop sign. *See id.*

¶ 19. At first, because she was nervous, Plaintiff could not locate her license and registration. After York returned to his vehicle, Plaintiff found the documents. When Plaintiff exited her car to take the documents to York, he became angry and began screaming at Plaintiff to get back into her car. *See id.* ¶ 22. Plaintiff then "retreated" and "stood quietly near the right rear of the car." *Id.* After standing in that location for ten minutes or more, Plaintiff became concerned about her son being at home alone. Plaintiff asked Defendant York "How long will this be, cause I have to get home?" *Id.* ¶ 23. York then leaped from his vehicle, ran at Plaintiff and pushed her over the trunk of her car. York roughly placed handcuffs on Plaintiff's wrists and tightened them such that Plaintiff experienced extreme pain in both wrists. *See id.* ¶ 25. Ignoring Plaintiff's complaints about the pain, York forcefully pulled her toward the police car and into the back seat. York used brute force to push Plaintiff into the vehicle, causing her head to strike the roof line of the rear door. *See id.* ¶ 28. York's violent pushing also caused Plaintiff to fall sideways onto the vehicle's floor. *See id.* ¶ 29. York continued to ignore Plaintiff's complaints of pain.

Defendant York called for a tow truck to remove Plaintiff's vehicle. After it was towed, York drove Plaintiff to the Northampton Police Station. At the station, York released the handcuffs from Plaintiff's wrists, but then immediately restrained her again by handcuffing her to a metal pipe. *See id.* ¶ 37. York told Plaintiff she would be going to prison that night. Another officer was present at this time, but did not intervene or assist Plaintiff. *See id.* ¶ 41. Eventually, York told Plaintiff he had changed his mind and would not charge her with a misdemeanor; instead, she would be charged with the summary offense of disorderly conduct. *See id.* ¶ 42. York also told Plaintiff that,

if she could not find someone to pick her up at the station that night, she would have to spend the night in the station's lock-up. Plaintiff eventually contacted her sister, who drove her home. *See id.* ¶ 46.

Plaintiff avers in the Complaint that Officer York had no legal or factual basis to stop Plaintiff in traffic, handcuff her, detain her, or charge her. The only charge ever filed was the summary offense of disorderly conduct—of which Plaintiff was found not guilty by a District Justice. *See id.* ¶ 49. Plaintiff further avers that the chief of police, Defendant Brownmiller, as well as the Defendant Borough,

> knew or should have known, of actions and conduct on the part of Defendant York, similar to the scenario and procedure which was utilized in connection with his interaction with Plaintiff, which pre-dated November 26, 2000, and which indicated that Defendant York was likely to arrest, "manhandle," and detain persons such as Plaintiff without proper or legal cause, justification, or excuse.

*Id.* ¶ 51. Finally, Plaintiff alleges that, prior to November 2000, York was sued for civil rights violations stemming from his interaction with a person named Shane Zimmerman. Plaintiff further alleges that Brownmiller and the Borough, having knowledge of York's prior misconduct, "condoned and encouraged the Defendant York in his actions in regard to the Plaintiff," by failing to adequately train, monitor, discipline, discharge or supervise York. *See id.* ¶ 52.

### III. Sufficiency of the Complaint

Defendants seek dismissal of Count II (Intentional Infliction of Emotional Distress), Count III (Assault and Battery), and Count IV (Negligent Infliction of Emotional Distress), as to the Defendant Borough. Defendants also seek dismissal of Count III as to Defendant Brownmiller.

Finally, Defendants seek dismissal of Counts II and IV as to Defendants York and Brownmiller, only insofar as those claims are brought against the two officers in their official capacities.[1]

### A. Counts II and IV

#### 1. Count II—Intentional Infliction of Emotional Distress

In Count II, Plaintiff asserts claims of intentional infliction of emotional distress against all three Defendants. Defendants contend that Plaintiff has failed to state a claim upon which relief can be granted against the Borough or against York and Brownmiller in their official capacities.

Plaintiff's intentional infliction of emotional distress claim against the Borough itself must fail under Pennsylvania's Political Subdivision Tort Claims Act (herein "the Tort Claims Act"). The Tort Claims Act provides that "no local agency [i.e. municipality] shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person"—unless the conduct of the municipality or its employee fits into one of a few narrow categories enumerated in the Tort Claims Act. 42 Pa.C.S. §§ 8541–42. While the statute permits municipal liability for certain "negligent acts," such acts "shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S. § 8542(a)(2).

Courts have held that intentional torts constitute "willful misconduct" under the Act, for which a municipality cannot be held liable under the Tort Claims Act. *See, e.g., Talley v. Trautman*, No. Civ.A. 96–5190, 1997 WL 135705, at *6 (E.D.Pa.

Mar.13, 1997); *Agresta v. City of Philadelphia*, 694 F.Supp. 117, 123 (E.D.Pa.1988). Courts have specifically found that municipalities are immune from claims of "intentional infliction of emotional distress." *See Agresta*, 694 F.Supp. at 123. Accordingly, under the Tort Claims Act, the Borough cannot be held liable on Plaintiff's intentional infliction of emotional distress claim, and Count II must be dismissed as to the Defendant Borough.

In addition, Plaintiff's claims against Defendants York and Brownmiller—in their official capacities—must be dismissed because suits against municipal employees in their official capacities are "treated as claims against the municipal entities that employ these individuals." *Smith v. School Dist. of Philadelphia*, 112 F.Supp.2d 417, 425 (E.D.Pa.2000) (*citing Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). This is because, in a suit against a municipal official in his official capacity, the real party in interest is the municipal entity and not the named official. *See id.* at 424. *See also Waites v. City of Philadelphia*, No. Civ.A. 00–2481, 2001 WL 484082, at *2 (E.D.Pa. March 5, 2001) (dismissing claims against city officials in their official capacities because such claims are simply another way of pleading an action against the employing government entity); *DeBellis v. Kulp*, 166 F.Supp.2d 255, 278 (E.D.Pa.2001) (granting summary judgment for city police officers, in their official capacities, on state law intentional tort claims, because such claims are considered to be asserted against the city); *Martin v. City of Philadelphia*, No. Civ.A. 99–543, 2000 WL 1052150, at *13 (E.D.Pa. July 24, 2000) (same).

---

1. Plaintiff's Complaint does not distinguish claims against the officers in their individual capacities from claims against them in their official capacities, and Defendants have not moved to dismiss Counts II and IV with respect to the officers in their individual capacities.

Accordingly, Count II must be dismissed as to Defendants York and Brownmiller in their official capacities.[2]

### 2. Count IV—Negligent Infliction of Emotional Distress

In Count IV, Plaintiff asserts claims of negligent infliction of emotional distress against all three Defendants. Defendants contend that Plaintiff has failed to state a claim upon which relief can be granted against the Borough or against York and Brownmiller in their official capacities.

Plaintiff's cause of action is, of course, premised on a negligence theory. *See, e.g., Brown v. Philadelphia College of Osteo. Med.*, 760 A.2d 863, 868 (Pa.Super.2000) (stating that to recover on claim of negligent infliction of emotional distress plaintiffs must prove the elements of a cause of action for negligence); *Wilder v. United States*, 230 F.Supp.2d 648, 654 (E.D.Pa.2002) (same). The Tort Claims Act waives the sovereign immunity of local governmental units with respect to only eight categories of "negligent acts," specifically: "(1) Vehicle liability.—The operation of any motor vehicle in the possession or control of the local agency ... (2) Care, custody or control of personal property ... (3) Real property ... (4) Trees, traffic controls and street lighting ... (5) Utility service facilities ... (6) Streets ... (7) Sidewalks ... (8) Care, custody or control of animals." 42 Pa.C.S. § 8542(b). A municipality cannot be held liable for a negligent act that does not relate to one of the above eight categories, which are to be strictly construed. *See, e.g., Lockwood v. City of Pittsburgh*, 561 Pa. 515, 751 A.2d 1136, 1139 (2000); *Talley*, 1997 WL 135705, at *5.

■ Plaintiff asserts that the first of these eight categories, pertaining to "vehicle liability," applies in the instant case. Yet, the Complaint does not allege any "operation" of the police vehicle that is related in any logical way to Defendants' alleged negligent infliction of emotional distress upon Plaintiff. Pennsylvania courts have held that a vehicle may be in "operation" when it is in motion or when certain parts of it are in motion. *See, e.g., Sonnenberg v. Erie Metro. Transit Auth.*, 137 Pa.Cmwlth. 533, 586 A.2d 1026, 1028 (1991) (holding that closing of bus's rear door constitutes "operation" of vehicle). While paragraph 37 of the Complaint states that Officer York drove to the police station after placing Plaintiff in the back seat of the police car, that operation of the vehicle is, at best, incidental to the conduct of Officer York which is alleged to have brought about Plaintiff's mental suffering, i.e. the unsubstantiated arrest and forceful shoving of Plaintiff, as well as York's allegedly willful tightening of the handcuffs around Plaintiff's wrists. No moving part of the police car was in any way involved in the events complained of in this lawsuit.

---

**2.** Plaintiff relies on 42 Pa.C.S. § 8550 in support of her intentional infliction of emotional distress claims against all three Defendants. That section provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546

(relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550. Pennsylvania courts have held that section 8550 "does not create an exception to section 8542 [insulating municipalities from liability for acts of willful misconduct] and therefore does not permit the imposition of liability on the City for the willful misconduct of its employees." *City of Philadelphia v. Brown*, 152 Pa.Cmwlth. 343, 618 A.2d 1236, 1238 (1992).

Apart from her vehicle liability theory, Plaintiff does not suggest that any of the remaining seven negligence categories apply. Accordingly, Plaintiff's negligent infliction of emotional distress claim is not premised upon a negligent act for which the Borough may be held liable under the Tort Claims Act, and Count IV must be dismissed as to the Defendant Borough.

Moreover, Plaintiff's claims against Defendants York and Brownmiller, in their official capacities, must be dismissed, because, as stated above, a suit against a municipal official in his official capacity is treated as a suit against the municipal entity itself. *See Smith, supra,* 112 F.Supp.2d at 425; *Waites,* 2001 WL 484082, at *2; *DeBellis,* 166 F.Supp.2d at 278; *Martin,* 2000 WL 1052150, at *13. Accordingly, Count IV must be dismissed as to Defendants York and Brownmiller in their official capacities.

### B. *Count III*

In Count III, Plaintiff asserts claims of assault and battery against all three Defendants. Defendants seek dismissal of Count III as to Brownmiller and the Borough.

■ Plaintiff's "assault and battery" count actually comprises two separate tort theories. To prove her claim of assault, under Pennsylvania law, Plaintiff must show that a particular Defendant intentionally caused an imminent apprehension of a harmful or offensive bodily contact in Plaintiff. *See Adams v. Purfield,* No. Civ.A. No. 95–4052, 1995 WL 610654, at *5 (E.D.Pa. Oct.18, 1995); *Sides v. Cleland,* 436 Pa.Super. 618, 648 A.2d 793, 796 (1994); Restatement (Second) of Torts

§ 21. To prove her claim of battery, Plaintiff must establish that a particular Defendant intended to cause a harmful or offensive contact to Plaintiff, or an imminent apprehension of such contact in Plaintiff, and that such contact with Plaintiff resulted. *See Friter v. Iolab Corp.,* 414 Pa.Super. 622, 607 A.2d 1111, 1115 (1992); *Adams,* 1995 WL 610654, at *5; Restatement (Second) of Torts § 18.

■ As discussed *supra,* the Tort Claims Act does not waive sovereign immunity with respect to intentional torts. *See* 42 Pa.C.S. § 8542(a)(2); *Talley,* 1997 WL 135705, at *6; *Agresta,* 694 F.Supp. at 123. This Court has specifically found that Pennsylvania municipalities are immune from claims of assault and battery. *See Talley,* 1997 WL 135705, at *6; *Agresta,* 694 F.Supp. at 123. Thus, Count III must be dismissed as to the Borough.

With respect to Police Chief Brownmiller, the Complaint does not state that Brownmiller participated in the alleged mistreatment of Plaintiff, or even saw her on the night of the arrest. The facts of the Complaint, no matter how liberally construed, in no way suggest that Brownmiller intentionally caused an imminent apprehension of a harmful or offensive bodily contact in Plaintiff, nor that he actually caused such harmful or offensive contact to occur.

■ Plaintiff has not cited a single case from a Pennsylvania appellate court to support her assertion that Chief Brownmiller can be held liable for assault and battery.[3] Rather, this Court's review of Pennsylvania case law suggests that a defendant cannot be held liable for assault if

---

**3.** The case of *Keich v. Frost,* 63 Pa. D. & C.2d 499, 1973 WL 15317 (C.C.P. Dauphin 1973), relied on by Plaintiff, is distinguishable, in that all of the defendants in *Keich* were actually present at the time of the alleged attack on the plaintiff, and, on that basis, the plaintiff in *Keich* alleged an agreement or design among the four rowdy boys to injure the plaintiff. In the present case, Plaintiff has not alleged facts suggesting that the Borough or Chief Brownmiller acted in concert with York to physically assault or batter Plaintiff.

he was not the principal actor, was not present at the scene of the assault, and did not otherwise specifically cause the assault to occur. *See, e.g., Sides,* 648 A.2d at 796 (outlining tort's basic elements). *Cf. D'Errico v. DeFazio,* 763 A.2d 424, 431 (Pa.Super.2000) (affirming summary judgment for sheriff where no evidence existed to show that he instructed or encouraged deputies to act in such a way as to place plaintiff in apprehension of battery). It follows that, under the same circumstances, the defendant cannot be held liable for battery either. Thus, Plaintiff cannot sustain an assault and battery claim against Chief Brownmiller in his individual capacity.

Nor can Plaintiff prevail on Claim III with respect to Defendant Brownmiller in his official capacity. As explained above, a municipality cannot be held liable for assault and battery, and any suit against a municipal official in his official capacity must be treated as a suit against the municipal entity itself. *See DeBellis, supra,* 166 F.Supp.2d at 278 (granting summary judgment for city police officers, in their official capacities, on assault and battery claims, because such claims are considered to be asserted against the city). *See also Smith,* 112 F.Supp.2d at 425; *Waites,* 2001 WL 484082, at *2; *Martin,* 2000 WL 1052150, at *13. Accordingly, Count III will be dismissed as to Chief Brownmiller, in both his individual and official capacities.

## IV. Punitive Damages Claims

■ Defendants also seek dismissal of Plaintiff's various claims for punitive damages, as to the Borough, and as to York and Brownmiller in their official capacities. With respect to Plaintiff's claims under 42 U.S.C. § 1983 (Count I of the Complaint),

the United States Supreme Court has unambiguously held that punitive damages may not be recovered against a municipal defendant. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

■ Nor can punitive damages be recovered against York and Brownmiller, in their official capacities, with respect to Plaintiff's § 1983 claims. The Supreme Court has clearly ruled that § 1983 claims against public servants in their official capacities are, in effect, suits against the government entity itself. *See Brandon v. Holt,* 469 U.S. 464, 472–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Thus, York and Brownmiller, in their capacities as officers of the Borough, are immune from Plaintiff's § 1983 punitive damages claims. *See, e.g., Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 262 (2d Cir.1997); *Howard v. Borough of Pottstown,* No. Civ.A. 00–3727, 2001 WL 180355, at *4 (E.D.Pa. Feb.16, 2001), *aff'd* 43 Fed.Appx. 522 (3rd Cir.2002) (table); *Hammerstone v. Solebury Tp.,* No. Civ.A. 94–4515, 1994 WL 612794, at *6 (E.D.Pa. Nov.7, 1994).

With respect to the state law causes of action (Counts II–IV), because the Borough is immune from all of Plaintiff's state law claims, *see supra* Part III, the Borough cannot be liable for punitive damages on any of those counts. Therefore, Plaintiff's punitive damages claims against the Borough in Counts II, III and IV must be dismissed.[4]

Likewise, Plaintiff's punitive damages claims against York and Brownmiller, in their official capacities, stemming from the state law claims, must be dismissed. Counts II and IV, raising emotional distress claims, must be dismissed as to York

---

4. Plaintiff does not expressly make a claim for punitive damages under Count IV of her Complaint; nevertheless, to the extent that

Plaintiff could attempt to raise such a punitive damages claim against the Borough later in this litigation, such a claim must fail.

and Brownmiller, in their official capacities, for reasons stated above. Therefore, no punitive damages may be assessed against the officers in their official capacities as to Counts II and IV.

Plaintiff's assault and battery claim, asserted in count III, against Chief Brownmiller, must be dismissed. *See supra* Part III.B. Therefore, any punitive damages claim against Brownmiller with respect to Count III must also be dismissed.

Similarly, Plaintiff cannot maintain an assault and battery claim against Defendant York, in his official capacity. Though Defendants have not actually moved for dismissal of Count III, with respect to Officer York in his official capacity, that aspect of Count III must fail for the same reasons that Count III fails as to Brownmiller in his official capacity. *See supra* Part III.B. Because Plaintiff ultimately cannot sustain an assault and battery cause of action against York in his official capacity, Plaintiff's claim for punitive damages stemming from her assault and battery claim must be dismissed as to Defendant York in his official capacity.

Accordingly, all of Plaintiff's claims for punitive damages, as to the Borough and as to York and Brownmiller in their official capacities, shall be dismissed.

## V. Motion to Strike

Finally, Defendants move this Court, pursuant to Rule 12(f), to strike from the Complaint any reference to an unrelated litigation, *Zimmerman v. York*, Civ.A. No. 94–4076, 1998 WL 111808 (E.D.Pa.1998), which terminated in 1998. In her Complaint, Plaintiff avers that Defendant Brownmiller, as well as the Borough, "should have known, of actions and conduct on the part of Defendant York ... which indicated that Defendant York was likely to arrest, 'manhandle,' and detain persons such as Plaintiff" without proper cause. Complaint ¶ 51. As an example, at paragraph 52 of her Complaint, Plaintiff alleges that York was previously sued for civil rights violations related to his interaction with Shane Zimmerman. *See id.* ¶ 52. Defendants argue that the Zimmerman case has no relevance or relation to the instant case. Moreover, Defendants assert that the Zimmerman case resulted in a grant of summary judgment, and therefore can have no legal or factual significance in the present matter.

■ Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f). Motions to strike are generally disfavored. *See, e.g., DiPietro v. Jefferson Bank*, No. Civ.A. 91–7963, 1993 WL 101356, at *1 (E.D.Pa. March 30, 1993). This Court has observed that the "standard for striking under Rule 12(f) is strict" and that "only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration" should be stricken. *Id.* (*quoting In re Catanella and E.F. Hutton and Co., Inc.*, 583 F.Supp. 1388, 1400 (E.D.Pa.1984)).

The reference to the Zimmerman case may prove to have some relevance to the instant case, in that evidence of York's prior misconduct may be admissible, among other things, to prove that the Borough and Chief Brownmiller had prior knowledge of such misconduct, or should have had such knowledge. *See, e.g., Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir.1996) (holding that where defendant police officers had been the subjects of five prior complaints of excessive use of force, there was sufficient evidence of a pattern of violent and inappropriate behavior so as to allow the inference that the Police Department knew of and tolerated the use of excessive force). The incident between Zimmerman and York, and the litigation

that ensued, may have some evidentiary or legal significance in this case, regardless of the fact that the Zimmerman case was disposed of on summary judgment. Accordingly, Defendants' motion to strike paragraph 52 of the Complaint, pursuant to Rule 12(f), will be denied.

## VI. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Under Rule 12(b)(6) will be granted in part and denied in part. Counts II, III and IV will be dismissed as to the Borough of Northampton. Counts II and IV will be dismissed as to Defendants Joseph York and Laird Brownmiller, in their official capacities. Count III will be dismissed as to Defendant Brownmiller in both his individual and official capacities. All of Plaintiff's claims for punitive damages, as to the Borough and as to York and Brownmiller in their official capacities, shall be dismissed. Finally, Defendants' motion to strike paragraph 52 of the Complaint, pursuant to Rule 12(f), will be denied.

An appropriate Order follows.