OLSZEWSKI, Judge:
 

 All of the litigants to this dispute live on Hill Island in the Susquehanna River. The island houses few permanent residents, is largely recreational, and has gained a reputation for the occupants’ somewhat riotous behavior.
 
 [1]
 
 Vacationers and residents alike ride motorcycles and all-terrain vehicles over the mountainous land. When George and Alice Cleland purchased their riverfront property in 1983, their tract was undeveloped; the foliage provided a place for the Cleland family to discover the wonders of nature. Only one thing prevented the property from remaining in its pristine state: a recorded plan established a right-of-way over the Clelands’ property. It is the scope of this right-of-way that is at issue in this suit.
 

 The plan describes the right-of-way as a “logging trail,” but also refers to it as a “30 foot trail,” which is expressly designated for the “common use of the residents of Hill Island.” When the Clelands bought the property, the trail was covered by forestation and used by no one. This did not
 
 *621
 
 last long, however, as the Clelands, in order to appreciate nature’s full beauty, cleared part of the trail as a footpath. Several years later, in 1990, the Clelands granted one of the plaintiffs, Geary Huntsberger, the right to clear a path wide enough for vehicles to pass; he wanted to drill a well on his property and found that the trail would provide the most direct route by which he could transport his equipment.
 
 [2]
 
 What Cleland saw as a favor, however, led to the industrialization of the trail. Although it is still described by many of the islanders as “basically a dirt road,” the inhabitants poured shale and other rock debris over the road to prepare it for vehicular use.
 

 The once idyllic condition of the trail traversing the Clelands’ property quickly became symbolic of man’s excesses: the neighbors and their vacationers drive their motorcycles at dangerous speeds across the Clelands’ property. Young children (one was seven years old) ride cycles there. Inhabitants throw beer parties and permit their guests to ride the trail after drinking. All of this was too much for Mr. Cleland. He feared for his family’s safety and was annoyed by the use of the trail at all hours of the day and night. He undertook a concerted effort to stop the abuses being wrought upon his land by erecting a fence across the right of way. He did not lock the fence, but erected it to keep the cyclists from travelling at dangerous speeds. He later felled a large tree across the trail and refused to remove it.
 

 Cleland’s efforts were not accepted by the neighbors. They claimed that they had a right to use the designated trail for any purpose they saw fit. One of the neighbors (it is unclear from the record exactly who) removed the fence and Geary Huntsberger corralled a group of inhabitants to vindicate their right to use the trail — he wanted to forcibly remove the Clelands’ felled tree. Knowing that his vigilantism would not be met without resistance, he asked one of his gang to
 
 *622
 
 videotape the confrontation and two of his band to arm themselves with chainsaws. When the group arrived at the Clelands’ property, Cleland perched himself in the tree. “Bring on the chainsaws!” Huntsberger cried. The sawyers began to cut around the tree, but after noticing Cleland’s resolve, stopped when it was clear that he would not budge.
 
 [3]
 
 Cleland’s resistance, however, did nothing to deter this lawsuit.
 

 Cleland’s neighbors, the Sides, and several other Hill Island inhabitants brought this suit in equity. They sought an injunction prohibiting the Clelands from interfering with their use of the trail. The Clelands countersued asking that use of the trail be limited to ingress and egress by abutting property owners and for compensation for damages caused by plaintiffs’ trespasses. Mr. Cleland also claimed that he was assaulted by Mr. Huntsberger during the confrontation over the felled tree. After hearing two days of testimony, viewing the videotape, and actually visiting the trail to evaluate its present condition, the Honorable Sebastian Natale found the facts as we described them and concluded that the trail’s current use is unreasonable. He therefore decreed that although Hill Island’s residents had a right to use the trail, it would be “restricted to daylight walking [and] vehicles travelling no more than ten miles per hour,” and that plaintiffs were enjoined from doing any further damage to the land. Judge Natale also held that Mr. Huntsberger assaulted Mr. Cleland, but that Mr. Cleland suffered no compensable damage.
 

 We begin by noting that where a deed incorporates a plan which makes specific reference to a right of way, an easement is implied over that property.
 
 Reed v. Reese,
 
 473 Pa. 321, 374 A.2d 665 (1976);
 
 Potis v. Coon,
 
 344 Pa.Super. 443, 496 A.2d 1188 (1985);
 
 see also, McAndrews v. Spencer,
 
 447 Pa. 268, 290 A.2d 258 (1972) (easement implied over road which
 
 *623
 
 bounded property where recorded plan incorporated road, even though road was never dedicated for public use). There is thus no question, and no one argues to the contrary, that the plan creates a private right in each of Hill Island’s residents to to use the trail on the Clelands’ property. The Clelands’ deed specifically refers to the plan which adopts the trail as one for the “common use” of the residents of Hill Island. Appellants, plaintiffs below, complain that Judge Na-tale erred in enjoining them from further developing the trail and limiting its use to daylight walking and slow moving vehicles. Their biggest gripe is that Judge Natale’s restrictions were based on his view of how the trail is used today instead of what the grantor contemplated when the trail was created. We disagree.
 

 Our review of the plan and the deeds in this case leads to the inescapable conclusion that the plan is ambiguous with regard to the trail’s contemplated purpose. The plan refers to the trail as a “logging trail,” but also refers to it as a “30 foot trail,” which is held for the “common use” of the residents. We quite agree that the term “common use” contemplates something more than logging, since the island was developed as a residential and recreational community. We must thus determine why the trail was created in the first place, and reference to the plan alone offers little conclusive help. As was stated in
 
 Lease v. Doll,
 
 485 Pa. 615, 403 A.2d 558 (1979), the circumstances attendant to the easement’s creation are important when defining the easement’s purpose:
 

 In ascertaining the scope of an easement created by express grant, the intention of the parties to the grant must be advanced. “Such intention [of the parties] is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.” Moreover, when the terms of an express grant of an easement are general, ambiguous, and not defined by reference to the circumstances known to the grantee at the time of the grant, the express easement is to
 
 *624
 
 be construed in favor of the grantee, and the easement may be used in any manner that is reasonable.
 

 Id.
 
 at 621, 403 A.2d at 562-563 (quoting
 
 Merrill v. Mfgrs. Light and Heat Co.,
 
 409 Pa. 68, 73, 185 A.2d 573, 575 (1962)) (other citations omitted).
 
 [4]
 

 Here, the trial court made reasonable efforts to determine the intent of the parties when the easement was created. It reviewed the maps, heard testimony from the parties with regard to the customary use of the trail, and actually viewed the trail in its current state. Although there was scant evidence with respect to the actual grant of the residents’ trail, plaintiffs presented a land surveyor, Charles Cook, who surveyed the property in 1991. He stated that when he surveyed the property, he saw what he considered “just a dirt road” which “looked more like what I would consider a logging trail.” N.T. 4/8/92 at 78. Nearly every person who testified, moreover, simply characterized the trail as “basically a dirt road.” Geary Huntsberger, the Clelands’ grantor and owner of the property when the original plan was filed, claimed that he did not even know that a trail existed until sometime in 1982, two years
 
 after
 
 the original plan was filed. Thus, we can hardly question the veracity of the Clelands’ claim that the trail was undeveloped when they purchased their tract.
 

 This testimony makes it abundantly clear that the “trail” reserved for the common use of Hill Island residents in the 1980 plan is nothing more than “a track made by passage through the wilderness.” Webster’s New Collegiate Dictionary (9th Ed., 1984) (defining “trail”). As such, the grantees — the plaintiffs and Hill Island’s residents — are entitled to use the trail in every manner consistent with a wilderness trail: they may walk on it and enjoy the natural setting of the
 
 *625
 
 island, they may use it reasonably to carry supplies from one person’s tract to another’s, or, if they so desire, use it in conjunction with their logging pursuits. It is not, therefore, a highway or a gathering place. Nor is it an amusement park where thrill seekers can drive all-terrain vehicles at potentially dangerous speeds at any time during the day and night. The trial court’s prohibitions on plaintiffs’ use of the trail — that they do no further damage to the Cleland’s land, that they not drive vehicles over ten miles per hour, and that they walk on it only during the daylight hours — implements the intent behind the trail’s creation by allowing the residents to use the trail and by preserving so much of its natural state that is consistent with that use. Judge Natale’s decree gives plaintiffs everything to which they are entitled (use of the trail) and protects the Clelands’ right to insist that the trail will be used reasonably.
 

 Furthermore, we reject plaintiffs’ contentions that the trial court focused on the current use of the trail to impose restrictions on its use. The trial court heard testimony from plaintiffs and everyone seemed to agree that the trail was “just a dirt road,” and has been a dirt road from time immemorial. Geary Huntsberger testified that the trail, as it exists today, is “pretty well the same as when the first Indian walked down the trail.” N.T., 4/8/92, at 110. Thus, when Judge Natale viewed the trail in 1994, he viewed the same trail, with minor exceptions, that was preserved in the 1980 plan. We have no reason to believe that Huntsberger’s grant- or contemplated preserving the trail for anything other than logging and reasonable recreational uses.
 
 [5]
 
 Again, Judge Na-tale’s decree is consistent with this contemplation.
 

 
 *626
 
 Finally, we disagree with Geary Huntsberger’s claim that the evidence was insufficient to prove that he assaulted Mr. Cleland. An assault occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact. Restatement (Second), of Torts, § 21. When a person approaches another with two associates wielding chainsaws, screams “Bring on the chainsaws!,” to which the sawyers respond by dismembering the tree in which the person sits, a factfinder could reasonably conclude that an assault has occurred. Frankly, we are at a loss to understand how a factfinder could arrive at any other conclusion.
 

 Judge Natale’s decree is affirmed in all respects.
 

 POPOVICH, J., concurs in the result.
 

 [1]
 

 . One of the plaintiffs, Tildón "Butch” Sides, acknowledged that this reputation has earned the island the cognomen "The Land of Beer and Honey.”
 

 [2]
 

 . No one in this case argues that the right-of-way, which essentially runs parallel to the island's beach, is necessary for ingress and egress to other properties from the beach. It appears that using the right-of-way makes it easier for the adjoining property owners to reach their fellow islanders’ property without having to navigate the river.
 

 [3]
 

 . The videotape was admitted into evidence at the trial, and we are urged to view it. Much to our chagrin, however, it has not been certified as part of the record on appeal. As a result, we reconstruct the scene from the trial court's findings of fact and evidence at trial, which surely does not capture the confrontation’s true drama.
 

 [4]
 

 . We must note that since the trail was created by reference to Hill Island's recorded plan — and not described in the residents' deeds — the right to use the trail is characterized as an implied easement, not an easement by express grant.
 
 Potis, supra
 
 at 344 Pa.Super. at 448-49, 496 A.2d at 1191-1192. We cite
 
 Lease
 
 only for the proposition that when a court interprets language which creates a right-of-way (such as the wording of Hill Island’s plan), ambiguous language must be interpreted in light of the grantor’s intentions.
 

 [5]
 

 . We understand that when a grantor reserves a right-of-way for the public that he envisions certain evolutionary advances which might affect its use. Thus, although we cannot expect that many Indians rode all-terrain vehicles over the trail, such use might be appropriate in 1994. Judge Natale’s decree acknowledges this and permits vehicular traffic on the trail. He has merely defined what "reasonable” use of the trail encompasses under the circumstances. We have absolutely no reason to question the judge’s perception.