J-A12014-15

2015 PA Super 170

| | |
|---|---|
| W. LOWELL STARLING AND NANCY STARLING, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| LAKE MEADE PROPERTY OWNERS ASSOCIATION, INC., | |
| Appellee | No. 1779 MDA 2014 |

Appeal from the Order Entered September 26, 2014
In the Court of Common Pleas of Adams County
Civil Division at No(s): 2010-S-498

BEFORE: BOWES, DONOHUE AND ALLEN, JJ.

OPINION BY BOWES, J.: **FILED AUGUST 11, 2015**

W. Lowell and Nancy Starling (the "Starlings") appeal from a final order entered in this case after the trial court granted partial summary judgment to Appellee Lake Meade Property Owners Association, Inc. (the "Association") as to the key issues in this property dispute. After considered review, we reverse and remand.

This matter concerns the ownership and/or use of certain property in the Lake Meade Subdivision of Adams County. A map of one-third of the Lake Meade Subdivision, which was recorded in three parts, follows:



The Lake Meade Subdivision is a tract of 1097.24 acres of real property located in two adjacent townships of Adams County, Pennsylvania, and is now owned by approximately 1040 families. The Association was formed to manage the Lake Meade Subdivision. All property owners of real property located in the Lake Meade Subdivision are members of the Association, which is run by a Board of Directors. The Lake Meade Subdivision, including the section depicted above, was recorded in the Office of the Recorder of Deeds of Adams County, on January 20, 1967, by the

developer of the subdivision, Lake Meade, Inc. By deed dated September 25, 1968, the developer purported to grant to the Association ownership, in fee simple absolute, of all of the roads in the Lake Meade Subdivision. In that same deed, the Association was conveyed approximately thirty-five lots still owned by the developer as well as the dam creating Lake Meade, the lake, and its basin.

The area at issue in this litigation is the northern part of the peninsula shown on the above subdivision map. An enlarged depiction follows:



The arrow to the left points to the first piece of land at issue in this case. We will refer to this property as the triangular-shaped piece of land. The Starlings own Lots 725 and 726 designated by the arrows on the right. This appeal involves ownership of the triangular-shaped piece of land, which the Starlings claim is part of Lot 726. This appeal also involves the types of activities that can be performed on the portion of Custer Drive and its cul de sac running to the west of Lots 725 and 726. Custer Drive and its cul de sac, as platted, were never fully paved. Rather, a narrow portion running directly down the center to an oval shaped portion of the cul de sac was paved. In aerial pictures taken of the area, Lot 726 appears contiguous to the triangular-shaped piece of property:



The Starlings acquired title to Lots 725 and 726 in the Lake Meade subdivision by deed dated August 12, 2002, from A. Bailey Wood and Doris A. Wood. Their deed contains the following description of the land:

> ALL THAT CERTAIN lot of land situate in Reading Township, Adams County, Pennsylvania, being more particularly described as Lot #725 and Lot #726 on a plan of lots of Lake Meade Subdivision, duly entered and appearing of record in the Office of the Recorder of Deeds of Adams County in Plat Book 1, Page 5, and subject to all legal highways, easements and rights of way and restrictions of record.

The Woods acquired Lots 725 and 726 on December 21, 1977, from Louise I. Cookson. Ms. Cookson bought the two lots on August 12, 1974, from W.F.O. and Elinor T. Rosenmiller. The Rosenmillers acquired Lots 725 and 726 by two deeds dated May 16, 1967, from Lake Meade, Inc.

Pertinent to this appeal are two claims that the Starlings raised in their complaint. The Starlings sought a determination that they owned the triangular-shaped piece of land and the entry of a permanent injunction prohibiting any type of activity on Custer Drive and its cul de sac other than vehicular traffic.

The Starlings set forth certain facts about another lawsuit that bears relevance herein. In 1976, Louise I. Cookson, who then owned parcels 725 and 726, brought an action against the Association. Ms. Cookson claimed that the Board of Directors of the Association had agreed to reduce the size of the Custer Drive cul de sac from that outlined in the subdivision plan and that she owned that portion of the cul de sac that was not paved.

Ms. Cookson did not prevail in that litigation. The court therein noted that the agreement was not enforceable due to the legal precept that a platted road in a recorded subdivision creates an easement in favor of all property owners in the subdivision. The trial court in the 1976 action ruled that the board could not agree to reduce the rights over Custer Drive's cul de sac that were possessed by all of the owners of property in the Lake Meade Subdivision.

Ms. Cookson also asked that the trial court declare that Custer Drive, including its cul de sac, could not be used for recreational purposes. The trial court declined to rule on that issue, concluding that there was no case or controversy in that respect since Ms. Cookson provided no proof that the Association either used or intended to use any portion of the cul de sac for recreational purposes. In the 1976 lawsuit, the court described parcel 726 as being bounded on three sides by Lake Meade, thereby implicitly indicating that the triangular shaped piece of land was part of parcel 726.

The Starlings averred in the present lawsuit that the Association did indeed start to allow the cul de sac and the northern part of Custer Drive, as well as the triangular-shaped piece of land, to be used for various recreational purposes. The Starlings outlined in their complaint the following. People regularly fished, picnicked, sunbathed, socialized, parked, loitered, created bonfires, and partied on Custer Drive, its cul de sac, and the triangular-shaped piece of land to the west. Some of the activities were

- 6 -

loud, boisterous, and profane, and some individuals were hostile to the Starlings. Vehicles were parked on Custer Drive and its cul de sac as well as on the Starlings' lawn, which had been damaged by bonfires, parked vehicles, and rocks thrown on it by strangers. The Starlings further noted that the majority of the vehicles used by individuals engaging in these activities did not have stickers issued by the Association and that, under the rules and regulations recorded with subdivision map, such vehicles were not permitted on the land in question.

The Starlings also alleged the following. In 2006, they began to complain to the Association about the many improper activities occurring on and around the northern portion of Custer Drive and its cul de sac, including the unauthorized use of the Lake Meade Subdivision by people who were not property owners. The Association refused to take any action to remove unauthorized people from the disputed property. Instead, the Association informed the Starlings that it owned a fee simple interest in Custer Drive and the cul de sac and that it had the authority to determine who could use the property and how it could be used. It then sponsored a Fourth of July celebration on the triangular-shaped piece of land and the portion of Custer Drive that abuts Lots 725 and 726.

In their second amended complaint, the Starlings raised five causes of action. Count one was a trespass claim as to the triangular-shaped piece of land. In that count, the Starlings claimed ownership of that land and

demanded that the Association be prevented from trespassing on it. In count two, the Starlings asked that the Association be ejected from the triangular-shaped piece of land. Count three was a nuisance cause of action. Counts four and five sounded in declaratory judgment. Count four asked for a declaration of the boundaries for Lot 726. Count five related primarily to the use being made of Custer Drive and its cul de sac. Therein, the Starlings sought a "decree enjoining permanently the Association from using Custer Drive and its cul-de-sac for purposes other than vehicular travel." Second Amended Complaint, 10/21/10, at ¶ 177 (a).

The Association moved for partial summary judgment claiming fee simple absolute ownership of Custer Drive, its cul de sac, and the triangular-shaped piece of land. It averred that it could use all of that property in any manner that it wanted. The Starlings countered that the Association was not the fee simple absolute owner of Custer Drive and its cul de sac since the developer did not own a fee simple absolute interest in the platted roads in the Lake Meade Subdivision in 1968, when the developer executed the deed to the Association purporting to give the Association that type of ownership interest in the subdivision roads. The Starlings argued that the platted roads, by virtue of the Lake Mead Subdivision plan recorded in 1967, were easements over which all the owners in the Lake Meade Subdivision had the right of travel. The Starlings also averred that there was a genuine issue of

material fact as to the ownership of the triangular-shaped piece of land as well as where the cul de sac on Custer Drive ended.

On January 15, 2013, the trial court granted partial summary judgment to the Association and dismissed all counts except the nuisance cause of action. The trial court ruled that the Association owned in fee simple absolute Custer Drive, its cul de sac, and the triangular-shaped piece of land running to the west of Custer Drive. It rejected the Starlings' position that the Association's "interest in the roads is only a right-of-way rather than fee simple ownership." Trial Court Opinion, 1/15/13, at 4. In support of that ruling, the trial court examined the September 25, 1968 deed from the developer to the Association and concluded that, in that document, the developer conveyed to the Association all platted roads in the Lake Meade Subdivision in fee simple absolute. It ruled that the Association owned the triangular-shaped piece of land by construing the deed to the Starlings as excluding that property. The trial court also permitted the Association to continue to use Custer Drive, the cul de sac, and the triangular-shaped piece of land for recreational activities and parking.

On September 26, 2014, by consent order, the remaining count pending in this action was withdrawn and the Starlings agreed to abandon any request for damages. The Starlings appealed from this final order resolving all outstanding claims. They raise these issues:

1. Did the trial court err in holding that the Appellants' deed and the incorporated subdivision plan unambiguously define the Appellants' northern boundary line as where the subdivision plan shows Custer Drive as being tangent with Lake Meade?

2. Did the trial court err in granting partial summary judgment in favor of the Appellee without resolving the factual issue of where the drafters of the original subdivision plan and deeds intended for the Appellants' property lines to be located?

3. Did the trial court misapprehend the import and effect of the fact that the common grantor's grant of the Appellants' property to the Appellants' predecessors in interest predated the common grantor's deed purporting to convey the roads in the subdivision to the Appellee in fee simple and improperly ignore the plain language of the Declarations and Restrictions purporting to reserve an easement "on, over, or under all road rights-of-way" when it held that the Appellee owns Custer Drive in fee simple?

4. Did the trial court err in granting partial summary judgment in favor of the Appellee where there are unresolved factual issues as to whether the drafters of the subdivision intended that Custer Drive and the area to the west of Custer Drive be used by the Appellee's membership for recreational purposes?

Appellant's brief at 4.

Since the trial court granted summary judgment to the Association, the following legal principles govern our review of this matter.

When reviewing a trial court's grant of summary judgment, our standard and scope of review are as follows:

Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving

party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Reinoso v. Heritage Warminster SPE LLC***, 108 A.3d 80, 84 (Pa.Super. 2015) (*en banc*) (citation omitted).

We first address the last two issues presented on appeal as our resolution of those questions aids in resolution of the first two contentions. We conclude that the trial court committed an error of law in finding that the Association has a fee simple ownership interest in Custer Drive and its cul de sac. There is a well-ensconced principle of law pertinent to this matter. The Starlings have consistently sought application of this principle and have not waived its invocation, as suggested by the Association.

It is of vast importance herein that the Lake Meade Subdivision was recorded in 1967, the year before the developer purportedly deeded all of the Lake Meade Subdivision roads in fee simple absolute to the Association. The first owner in the Starlings' chain-of-title acquired Lot 726 in 1967. According to the September 25, 1968 deed, as of that date, Lake Meade Inc. owned approximately thirty-five of the over one thousand lots depicted on the recorded subdivision map. As our Supreme Court articulated in ***Kao v.***

*Haldeman*, 728 A.2d 345, 347 (Pa. 1999), upon which the Starlings rely in their appellate brief, when lots are sold as part of a recorded subdivision plan on which "a street has been plotted by the grantor, the purchasers acquire property rights in the use of the street." Specifically, all purchasers of property in a subdivision acquire an easement over all platted roads in the subdivision plan. This right is described as "an 'easement of access' which means the right of ingress and egress to and from the premises of the lot owners. It is a property right appurtenant to the land which cannot be impaired or taken away without compensation." *Id*. (citation omitted). *Accord Potis v. Coon*, 496 A.2d 1188, 1193 (Pa.Super. 1985) ("It is well settled that the grantee of a lot, which is sold according to a plan of lots on which streets or alleys not previously opened or projected as a public street are plotted out by the grantor, acquires an easement over those streets and alleys as a private right of property arising out of the grant, of which he cannot be deprived without compensation."). This precept is settled law in this Commonwealth, *Kao*, *supra*, and is outlined in the Restatement of Property thusly:

> § 2.13 Servitudes Implied from Map or Boundary Reference
>
> In a conveyance or contract to convey an estate in land, description of the land conveyed by reference to a map or boundary may imply the creation of a servitude, if the grantor has the power to create the servitude, and if a different intent is not expressed or implied by the circumstances:

(1) **A description of the land conveyed that refers to a plat or map showing streets**, ways, parks, open space, beaches, or other areas for common use or benefit, **implies creation of a servitude restricting use of the land shown on the map to the indicated uses**.

(2) A description of the land conveyed that uses a street, or other way, as a boundary implies that the conveyance includes an easement to use the street or other way.

Restatement (3d) of Property-Servitudes § 2.13 (emphasis added).

The developer, Lake Meade Inc., of the Lake Meade Subdivision recorded the subdivision map in 1967, before it purported to grant, in fee simple absolute, the roads outlined on that subdivision map. When the map was recorded, all the property owners who then purchased land in the Lake Mead Subdivision acquired an easement of ingress and egress over all roads platted on the subdivision map. Many lots were sold by Lake Meade Inc. between the recording of the subdivision map and the deed to the Association.

As of September 25, 1968, the developer did not own any road in fee interest absolute because it had recorded the subdivision map and sold lots in the subdivision. As owner of certain unsold lots in 1968, the developer owned an easement in the platted roads shown on the subdivision map when it conveyed the roads to the Association. The grantor in a deed cannot convey title to property greater than that owned by the grantor. *See* ***Ecenbarger v. Lesoine***, 438 A.2d 969 (Pa.Super. 1981) (where grantor did not own property in fee but was co-owner, grantor could not convey

easement over section of property owned in common with other grantors without joinder of other property owners). The developer simply did not own a fee simple interest in the platted roads in the development in 1968, when it purported to grant such an interest to the Association. The trial court therefore erred, as a matter of law, in ruling that the 1968 deed created a fee simple absolute ownership interest in the Association to Custer Drive in the Lake Meade Subdivision and that, as fee simple owners, the Association could continue to use Custer Drive as it wished.

Indeed, the logical implications of a finding that the Association owns, in fee simple absolute, the platted roads in the subdivision are far-reaching and counter-intuitive. If the Association owned the roads in fee simple absolute, it could sell those roads and permit houses to be built on them. It could allow them to be used as parking lots. The Association could thereby prevent access by Lake Meade Subdivision property owners to their lots.

No one would suggest that the Association could allow the part of Custer Drive running along lots 715 through 719 to be used as a parking lot, for parties, and for bonfires. If that were the case, the owners of lots 720 through 726 would be denied access to their land. Why then should the portion of Custer Drive in front of Lots 725 and 726 be used for these types of activities? All of the property owners in the Lake Meade Subdivision own a right of way over Custer Drive, in its entirety, for purposes of ingress and egress. That is the extent of their ownership interest.

The trial court in the 1976 action brought by Ms. Cookson clearly recognized this principle of law. It ruled that the Board of Directors of the Association could not reduce the size of the platted cul de sac on Custer Drive and convey a portion of the cul de sac to the owner of Lot 726. It reasoned that such a conveyance would impair the vested property right of ingress and egress over Custer Drive enjoyed by all property owners in the Lake Meade Subdivision.

The law provides that platted roads in a recorded subdivision plan constitute right of ways for purposes of ingress and egress running to the benefit all subdivision property owners. Hence, the trial court committed an error of law in concluding that the Association owns Custer Drive and its cul de sac in fee simple absolute.

Since we have determined that the Association does not own Custer Drive and its cul de sac in fee simple absolute, the secondary question becomes what use the property owners in the subdivision are permitted to make of Custer Drive. In this respect, the law is also settled. The owner of an easement can make any use of it that is not inconsistent with the purpose for which the easement was created. ***Minard Run Oil Co. v. Pennzoil Co.***, 214 A.2d 234, 235 (Pa. 1965).

***Sides v. Cleland***, 648 A.2d 793 (Pa.Super. 1994), upon which the Starlings also rely, is dispositive. The litigants in that case owned property on Hill Island, almost entirely a recreational property, in the Susquehanna

River. The Clelands purchased undeveloped riverfront property on the island, and there was a recorded plan that established a right-of-way over the Clelands' property. In **Sides**, we were asked to determine "the scope of this right-of-way." **Id**. at 794.

The plan wherein the Clelands purchased their property described the right-of-way as a "30 foot trail," which was designated for the "common use of the residents of Hill Island." **Id**. When the Clelands bought the property, the trail was covered by forestation and used by no one. They began to use it as a foot trail. Eventually, the island inhabitants poured shale and rock over the trail and began to ride motorcycles over it at excessive speeds. They also began to throw parties on the right-of-way and allowed guests to use it.

The Clelands erected barriers across the right-of-way preventing its use other than for foot travel and impeding the driving of vehicles at excessive speeds. The Sides and other Hill Island inhabitants brought the lawsuit and claimed that they could use "the designated trail for any purpose they saw fit." **Id**. The trial court disagreed and restricted the use of the right of way by Hill Island's residents "to daylight walking and vehicles travelling no more than ten miles per hour." **Id**. at 795.

This Court affirmed, noting at the inception that "where a deed incorporates a plan which makes specific reference to a right of way, an easement is implied over that property." **Id**. We continued that, under that

- 16 -

principle of law, the plan created a private right in each resident of Hill Island to use the trail on the Clelands' land. In **_Sides_**, this panel then specifically rejected the Sides' position that they were permitted to use the trail for any purpose that they wished.

The **_Sides_** court noted that the scope of an easement holder's right to use the easement is limited to the use contemplated when the easement was created. We continued that "the circumstances attendant to the easement's creation are important when defining the easement's purpose." **_Id_**. This Court affirmed the trial court's ruling because the court made "reasonable efforts to determine the intent of the parties when the easement was created. It reviewed the maps, heard testimony from the parties with regard to the customary use of the trail, and actually viewed the trail in its current state." **_Id_**. at 796.

The **_Sides_** decision held that the Hill Island residents and vacationers could use "the trail in every manner consistent with a wilderness trail: they may walk on it and enjoy the natural setting of the island, they may use it reasonably to carry supplies from one person's tract . . . ." **_Id_**. Particularly relevant herein, we noted that the trail could not be used as "a highway or a gathering place" or an "an amusement park where thrill seekers can drive all-terrain vehicles at potentially dangerous speeds at any time during the day and night." **_Id_**.

In the present case, Custer Drive is designated as a road and cul de sac. Vehicles and pedestrians use a road and cul de sac for travel purposes. Indeed, the applicable legal precept is that any platted road in a subdivision creates a legal right of ingress and egress in the subdivision owners. One does not use a road for recreational activities such as parties, bonfires, sunbathing, and fishing. There is no recreational right attendant to the easement that Lake Meade Subdivision property owners enjoy over Custer Drive and its cul de sac.

In count five of their complaint, the Starlings set forth that they were seeking declaratory judgment relief as to the use of Custer Drive and its cul de sac. Section 7533 of Title 42, entitled construction of documents, permits the courts to construe documents and declare rights and responsibilities thereunder:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S. § 7533.

In this case, the Lake Meade Subdivision, as a recorded instrument, establishes the rights of the parties to this action with respect to Custer Drive and its cul de sac. As detailed, **supra**, the platted roads on a subdivision map constitute easements for purposes of ingress and egress

inuring to the benefit of the landowners in the subdivision. The law is likewise settled that an easement cannot be used for purposes other than those contemplated when the easement was created. These roads were created to provide ingress and egress to the owners in the Lake Meade Subdivision in order to access their land. Custer Drive and its cul de sac are not designed as common areas and cannot be used for recreational activities and as parking lots. The Association does not enjoy the right to use Custer Drive and its cul de sac for anything other than ingress and egress.

We therefore reverse the trial court's decision to grant summary judgment to the Association and to declare that the Association is the fee simple absolute owner of Custer Drive and its cul de sac. We remand for entry of a decree, in accordance with the relief requested in count five of the Starlings' second amended complaint, permanently enjoining the use of Custer Drive and its cul de sac for any purpose other than vehicular and pedestrian ingress and egress. This prohibition is not to be limited to that portion of Custer Drive that is paved; it applies to Custer Drive and its cul de sac, as platted in the Lake Meade Subdivision map recorded in 1967.

We now address the first questions raised by the Starlings, whether the trial court erred in granting summary judgment to the Association by concluding that there was no genuine issue of material fact that the Starlings did not own the triangular-shaped piece of land and that the Association did own that piece of property and could continue to use it for recreational

activities. Our review substantiates that the Starlings are correct in asserting that there is no evidence of record indicating that the Association owns the triangular-shaped piece of land. The Association did not produce a deed to the triangular-shaped piece of land, which is not a lot transferred to the Association in the September 25, 1968 deed from the developer.

The trial court's conclusion that the Association owned the triangular-shaped piece of land rested solely upon the trial court's examination of the deed to the Starlings and its conclusion that the Starlings' deed did not include the triangular-shaped piece of land. The fact that the Starlings do not own the triangular-shaped piece of land, however, does not mean that the Association does own it and can allow people to use it for recreational purposes. The Starlings did not ask for summary judgment on this question, and they produced evidence in opposition to the grant of summary judgment to the Association. Most significantly, the Starlings noted that the August 12, 1974 deed from the Rosenmillers to Ms. Cookson had an attached survey also recorded with the deed. The survey is of Custer Drive and its cul de sac and shows both the paved and unpaved portions:



This detailed survey indicates that there is a wide swath of land between the cul de sac and Lake Meade and that Lot 726 could include land to the north of Custer Drive's cul de sac continuing to Lake Meade as its western boundary. We believe that this survey establishes that there is a

genuine issue of material fact as to whether Lot 726, which is not described in the deed by metes and bounds, includes the triangular-shaped piece of land. Hence, we conclude that summary judgment was improperly granted in favor of the Association as to counts one, two, and four of the complaint and that it should not have been declared owner of the triangular-shaped piece of land and permitted to make recreational use of it.

We observe that the Association's brief presents the incorrect assertion that the Starlings are claiming ownership of Custer Drive and its cul de sac. *E.g.* Appellees' brief at 29 ("The trial court did not err in determining that the Starlings' deed does not convey to them Custer Drive."). The Association continually conflates the distinct properties at issue by referencing the triangular-shaped piece of land together with Custer Drive. It fails to properly distinguish between the discrete remedies sought by the Starlings with respect to Custer Drive and to the triangular-shaped piece of land.

The Starlings claimed ownership solely in the triangular-shaped piece of land to the west of Custer Drive, which they called the Disputed Portion of the Starling Tract in their second amended complaint. The specific allegations were as follows:

> 37. There is a narrow strip of unimproved real property located immediately **to the west of Custer Drive** and between Custer Drive and Lake Meade.

38. The Starlings maintain that the narrow strip of unimproved real property **located to the west of Custer Drive** and between Custer Drive and Lake Meade is part of the Starling Tract and therefore is owned by the Starlings.

39. The narrow strip of unimproved real property **located to the west of Custer Drive** and between Custer Drive and Lake Meade (the "**Disputed Portion of the Starling Tract**") does, in fact, belong to the Starlings.

Second Amended Complaint, 10/21/10, at ¶ ¶ 37-40 (emphases added).

A review of the second amended complaint establishes that the Starlings' trespass and ejectment counts pertained to the "Disputed Portion of the Starling Tract." *See id*. at ¶¶ 138-142, 146-152. As noted, that tract was defined in paragraphs thirty-seven through forty as lying to the west of Custer Drive. In the declaratory judgment count set forth as count four, the Starlings asked for a declaration as to the ownership of the Disputed Portion of the Starling Tract. With respect to Custer Drive, the Starlings sought an injunction restricting its use; they made no attempt to alter its boundaries.

We also reject the Association's suggestion that the Starlings admitted that the Association owned Custer Drive. Appellee's brief at 32. The portion of the second amended complaint and answers to preliminary objections relied upon by the Association in this respect constituted a description of the contents of the 1968 deed from Lake Meade Inc. to the Association. Second Amended Complaint, 10/21/10, at ¶ 13 ("By Deed dated September 25, 1968, Lake Meade, Inc. granted to the Association ownership of the roads in the Lake Meade Subdivision, a dam, a man-made lake and lake basin

(commonly referred to as Lake Meade) and certain, specified lots designated on the recorded Lake Meade Subdivision Plan. . . . A true and correct copy of the September 26, 1968 Deed is attached hereto as Exhibit "D" and made a part hereof by reference."); Plaintiffs Brief In Opposition To Defendant's Preliminary Objections To Second Amended Complaint, at 3 ("By Deed dated September 25, 1968, Lake Meade, Inc. granted to the Association ownership of the roads in the Lake Meade Subdivision, a dam, a man-made lake and lake basin (commonly referred to as Lake Meade) and certain, specified lots designated on the recorded Lake Meade Subdivision Plan."). These statements were part of a recitation of the pertinent procedural history and were not admissions that the described deed was effective to grant a fee simple absolute ownership interest in the roads to the Association.

In sum, we remand for the grant of partial relief to the Starlings as to count five of their second amended complaint and for entry of an injunction permanently enjoining use of the entirety of the platted Custer Drive and the entirety of its platted cul de sac to any use other than for ingress and egress. We also reverse the grant of summary judgment in favor of the Association as to counts one, two, and four of the second amended complaint and remand for further proceedings consistent with this writing.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2015