J-A20003-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| MICHAEL D. MAURER, JR. AND NATASHA M. SULLIVAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 189 WDA 2020 |
| RONALD D. PENAR AND NANCY V. PENAR | : | |

Appeal from the Judgment Entered January 14, 2020
In the Court of Common Pleas of Beaver County Civil Division at No(s):
11090-2018

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: FILED JANUARY 25, 2021

This is a property dispute involving an express easement. Michael D. Maurer, Jr. and Natasha M. Sullivan, (collectively "Maurer"), owners of the servient tenement, appeal from the January 14, 2020 judgment[1] in favor of Ronald D. and Nancy V. Penar (collectively "Penar"), owners of the dominant tenement, in Maurer's action for breach of contract, unjust enrichment, and quiet title, and on Penar's counterclaim asserting a prescriptive easement. After review, we affirm.

_____

[1] Maurer purported to appeal from the order granting and denying post-trial motions. Generally, an appeal to this Court properly lies from the entry of judgment, not from the order denying post-trial motions. Mackall v. Fleegle, 801 A.2d 577, 580 (Pa.Super. 2002). We have amended the caption accordingly.

The following facts are undisputed. In 1995, the property at 39 Temple Road was owned by Bena Brooks. On April 12, 1995, Penar purchased the adjacent property at 37 Temple Road from Alvin E. Paczak, Executor of the Estate of John Paczak. On that same date, Ms. Brooks executed an Easement Agreement ("Agreement") granting Penar an easement for "ingress, egress, and utilities." The easement consists of a triangular parcel of land adjacent to Penar's house and garage and abutting their common property line, which was duly recorded in the Recorder of Deeds Office of Beaver County.[2] Since the purchase, Penar has utilized the property at 37 Temple Road as a rental. The present tenants, Shirley and Bill Zanath, have resided there since 1998.

---

[2] The side of the Penar garage is approximately three feet from the border with the Maurer property. The easement, sixteen feet wide at its widest point, permitted access to the rear of the Penar property on the left side of the house. Solely for ease of visualization, we offer the following diagram, which is a modified version of the survey included in Joint Exhibit 4.



In December 2017, Maurer purchased Ms. Brooks's property subject to the express easement. The Maurer property has a frontage of 165 feet. The side of the Maurer house is approximately seventy-five feet from the property line with Penar. The express easement is located on that property line Maurer shares with Penar, and it covers approximately sixteen feet of the Maurer property at the street and narrows as it proceeds to the rear of the Penar house, ultimately to a point.

Maurer testified, and it was not disputed, that commencing in January 2018, the tenant would drive a truck carrying firewood on the easement "down and around and back for no reason." N.T., 10/7/19, at 11. He would also drive a quad up and down the easement. In addition, the tenants consistently parked in the top of the easement on the gravel, blocking access that Maurer would have to that part of his property. Id. They would also sometimes park their vehicles on the grass, both within and outside the easement, creating deep ruts in Maurer's property. Maurer admitted that he had verbal altercations with the tenants over their misuse of the easement. He testified that he would have had no objection to Penar or the tenants maintaining the easement, although he did not want them to mow the grass or place gravel on the easement. Id. at 25. Maurer advised the court that the relief he sought was termination of the easement.

Maurer filed an action seeking a judicial finding that Penar was either in breach of contract or unjustly enriched, and termination of the easement and

quiet title. Penar denied that parking exceeded the scope of the easement for ingress and egress. Moreover, he filed a counterclaim asserting that he had a prescriptive easement to park in the easement based on more than twenty-one years of such adverse use.

A non-jury trial took place on October 7, 2019. By order and verdict dated October 9, 2019, the trial court found in favor of Penar on Maurer's claims, and in favor of Maurer on Penar's counterclaim alleging a prescriptive easement. Both parties filed motions for post-trial relief in which they also asked the trial court to determine which party was responsible for maintenance of the easement. The trial court denied Maurer's motion for post-trial relief, but granted Penar's motion, finding that there was a prescriptive easement for parking co-terminus with the express easement. The court also concluded that Penar was responsible for maintaining the easement.

Maurer timely appealed and complied with Pa.R.A.P. 1925(b). The trial court filed a Rule 1925(a) opinion adopting its January 9, 2020 opinion on post-trial motions. Maurer raises four issues for our review:

I.    Whether the trial court erred and abused its discretion in its denial of Maurer's claim for breach of contract at the time of trial and post[-]trial motion when the evidence was sufficient to support a finding that an express agreement existed between the parties and Penar admittedly breached the clear and plain language of the agreement and when the trial court failed to find that Penar's violation of the express agreement was egregious and therefore merited quieting of title in favor of Maurer?

II.      Whether the trial court erred and abused its discretion in finding the existence of an easement by prescription when Penar did not meet the burden to establish an easement by prescription and when the evidence at trial was insufficient to support the trial court's finding of the existence of an easement by prescription?

III.     Whether the trial court erred and abused its discretion in setting the metes and bounds of the prescriptive easement which were beyond the scope of the testimony offered by the parties when the evidence at trial was insufficient to support the trial court's determination regarding the metes and bounds of the prescriptive easement?

IV.     Whether the trial court erred and abused its discretion when it failed to grant Maurer's motion for post[-]trial relief for an injunction prohibiting Penar from parking on the express easement when the evidence was sufficient to support a finding that an express agreement existed between the parties, the trial court did not have the authority to expand the scope of the express easement, and Penar admittedly breached the clear and plain language of the agreement?

Appellant's brief at 2-4 (unnecessary capitalization omitted).

In reviewing cases arising from non-jury trial verdicts, we must determine whether the findings of the trial court are supported by the evidence and whether there is any error of law. *Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 549-50 (Pa.Super. 2004). In making that determination, the trial judge's findings of fact must be given the same weight and effect as a jury verdict and we must view the evidence in a light most favorable to the verdict winner. *Id.* See also *Gutteridge v. 33 Energy Group, Inc.*, 165 A.3d 908, 914 (Pa.Super. 2017). As Maurer's first issue involves interpretation of the language of an express easement, which

is a question of law, our scope of review of that issue is plenary and our standard of review is de novo.

The following principles inform our review. An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." Stanton v. Lackawanna Energy, Ltd., 886 A.2d 667, 676 n.7 (Pa. 2005) (quoting Black's Law Dictionary, 8th ed. (2004), at 1108)). Where, as here, the easement is appurtenant, it runs with the land designated as the dominant tenement, which is the land benefitted by the easement. The servient estate is the land over which the easement extends and which is burdened by the easement. McNaughton Props., LP v. Barr, 981 A.2d 222, 223 (Pa.Super. 2009).

At issue herein are two types of easements: express easements and prescriptive easements. An express easement is written in an instrument such as a deed or a grant, issued by the owner of the servient estate. In determining the nature and extent of an express easement, we look to the language of the deed of conveyance to determine the intention of the parties. Unless the language of an express easement is ambiguous, the language controls. Baney v. Eoute, 784 A.2d 132, 136 (Pa.Super. 2001). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside of the contract." Id. Where, however, the language is ambiguous, the intent of the grantor must be

determined from the facts presented, which may include the circumstances existing when the easement was created and the purpose for its creation. See Sides v. Cleland, 648 A.2d 793, 795 (Pa.Super. 1994). "When the terms of an express easement are general, ambiguous, and not defined by reference to the circumstances known to the grantee at the time of the grant, the express easement is to be construed in favor of the grantee, and the easement may be used in any manner that is reasonable." Id. (quoting Lease v. Doll, 403 A.2d 558, 562-63 (Pa. 1979).

In contrast, a prescriptive easement is not fixed by agreement between the parties or their predecessors-in-interest. See Soderberg v. Weisel, 687 A.2d 839, 843 n.3 (Pa.Super. 1997). Rather, it is a right to use another's property that is "created by adverse, open, continuous, notorious and uninterrupted use of the land for twenty-one years." Adshead v. Sprung, 375 A.2d 83, 84 (Pa.Super. 1977). Prescriptive easements are not favored, and the party claiming a prescriptive easement must present clear and positive evidence. Id.

The express easement from Ms. Brooks to Penar provides in pertinent part:

> WHEREAS, the Grantor herein desire[s] to convey to Grantee an easement for ingress, egress and utilities over a portion of Grantor[']s realty, it is hereby agreed as follows:
>
> For and in consideration of $325.00, receipt of which is hereby acknowledged, the Grantor herein conveys to Grantees, their heirs and assigns, an easement over and across lands of

Grantor for the purpose of ingress, egress and utilities described as follows:

[metes and bounds description.]

The above-described triangular piece of realty is further shown and described in the survey of Robert D. O'Neal dated March 1995 and attached hereto.

Easement Agreement, Joint Exhibit 4.

Maurer contends first that the express easement, which unambiguously provides that it may be used for "ingress, egress, and utilities," does not include parking within its scope. He argues that parking on the easement is inconsistent with the express use of ingress and egress and his own use and enjoyment of the land. Maurer claims that this abuse of the easement has damaged his property, both within and outside the easement, and that voiding the Agreement and quieting title in Maurer is the proper remedy for Penar's violation of its express terms.

Penar's position is that his tenants' use of the easement is "consistent with rights granted under the terms of the easement and rights which [Penar] ha[s] acquired by prescription." Answer, 12/24/18, at ¶17. He argues that there is no legal authority for terminating an easement due to alleged misuse. Rather, Penar maintains that the proper remedy "is a nuisance suit and not judicial destruction of the easement holder's property." Appellee's brief at 6 (citing Moody v. Allegheny Valley Land Trust, 976 A.2d 484, 493 (Pa. 2009)). Furthermore, he contends that the trial court properly found a prescriptive easement for parking on the same triangular parcel designated

as an express easement as Mrs. Penar testified that the parcel had been continuously used for that purpose for more than twenty-one years. Having failed to cross-examine Mrs. Penar or offer any contrary testimony, Penar argues that Maurer cannot now complain that evidence of a prescriptive easement was not clear and positive.

The trial court relied upon *Ruffalo v. Walters*, 348 A.2d 740, 741 (Pa. 1975), for the proposition that an easement is terminated or abandoned only if the owner of the dominant estate intends to "abandon the easement, coupled with either (1) adverse possession by the owner of the servient tenement; or (2) affirmative acts by the owner of the easement that renders use of the easement impossible; or (3) obstruction of the easement by the owner of the easement in a manner that is inconsistent with its further enjoyment." Trial Court Opinion, 1/9/20, at 4. The trial court found no evidence that the express easement was abandoned or terminated by Penar. However, the trial court did not specifically rule on whether parking exceeded the scope of the express easement. Rather, the trial court found that there was a prescriptive easement to park on the area designated as the express easement as the easement had been continuously used for that purpose for more than twenty-one years.

Maurer cites no authority in support of his claim that the proper remedy for misuse or abuse of an express easement is a quiet title action seeking to effect termination or forfeiture of the easement. Nor have we found any legal

support for Maurer's position. Thus, we agree with the trial court that Maurer was not entitled to the relief sought.

Furthermore, while we find support for Maurer's claim that the language providing for an easement for purposes of ingress, egress and utilities is unambiguous, and does not contemplate parking on the easement, there was uncontroverted evidence that the easement was used for parking for twenty-four years. See PARC Holdings, Inc. v. Killian, 785 A.2d 106, 115 (Pa.Super. 2001) (stating that the grant of a right to "ingress and egress" is a type of easement, which may be "specifically defined as the entrance and exit of people, or people and vehicles, or more generally defined as access to the dominant estate").

Maurer argues that the evidence of a prescriptive easement, especially one covering the same triangular parcel as the express easement, was legally insufficient. Although Mrs. Penar testified that the easement had been used by their tenants for parking continuously since they purchased the property in 1995, Maurer discounts her testimony because she was not a disinterested witness. He contends that her testimony did not meet the "clear and positive" threshold required to prove a prescriptive easement.

Viewing the evidence in the light most favorable to the verdict winner, as we must, we find the requisite support in the record for the trial court's conclusion that Penar had a prescriptive easement to park in the express easement. Mrs. Penar testified to the following. She never asked Bena Brooks

or Maurer for permission to use the easement for parking, and thus, the use was adverse. Her tenants had continuously used the easement for that purpose for twenty-four years. Both Mrs. Penar and Maurer confirmed that the tenants' parking was open and notorious, i.e., that the use was such as to "place a reasonable person on notice that his or her land is being held by the claimant as his own." Appellant's brief at 16 (quoting Brennan v. Manchester Crossings, Inc., 708 A.2d 815, 818 (Pa.Super. 1998)). See also Adshead, supra (finding appellee's use of driveway area to be open and notorious where driveway was immediately adjacent to appellant's property and photographs depicted tire tracks leading from paved area of appellant's driveway to appellee's garage). Based on the record before us, we have no basis to disturb the trial court's finding that there was a prescriptive easement for Penar to park on the express easement.

Maurer directs our attention to the Restatement of Property § 477, which provides that "[t]he extent of an easement created by prescription is fixed by the use through which it was created." 5 Restatement of Property 2992, § 477. He complains that there was no testimony that would support the trial court's finding that the prescriptive easement was co-extensive with the express easement. Absent, he contends, was any evidence defining the area of the express easement used for parking in the years before he purchased his property in 2017. While Maurer does not specify what relief he should be entitled to, he cites Hash v. Sofinowski, 487 A.2d 32, 36

(Pa.Super. 1985), wherein this Court vacated and remanded the case to the trial court "with instructions to pinpoint more precisely the exact bounds of the original right-of-way as it existed over a 21-year period of continuous adverse use." Appellant's brief at 23.

Herein, the express easement was defined by deed and depicted on a survey. Evidence established that since 2017, the top portion near the street was covered with gravel and used on a daily basis for parking; the grassy lower portion of the easement was often used for parking, as depicted in photographs introduced by Maurer. However, Mrs. Penar established that tenants parked "in the easement," which includes both the gravel and grassy areas, since 1995. We find the evidence sufficient to establish that the prescriptive easement for parking was co-extensive with the express easement.

In light of our affirmance of the trial court's finding of a prescriptive easement for parking, Maurer's final argument that the trial court abused its discretion when it denied his motion for post-trial relief seeking an injunction prohibiting Penar from parking on the express easement, and lacked the authority to modify the scope of the express easement to permit parking, merits no relief. See Appellant's brief at 27.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/25/2021