J-A15043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| DAVID J. IOANILLI, CATHY ANN IOANILLI, ROBERT BOYLE, JR., AND GWENDOLYN L. BOYLE | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| NICHOLAS CARNOVALE | : : | No. 1213 WDA 2022 |
| Appellant | : | |

Appeal from the Judgment Entered December 22, 2022
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  10473 of 2020

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED:  September 12, 2023**

Nicholas Carnovale (Carnovale) appeals from a judgment of the Court of Common Pleas of Lawrence County (trial court) finding that David J. Ioanilli and Cathy Ann Ioanilli (the Ioanillis), owners of the property at 1773 Dutch Ridge Road, and Robert Boyle, Jr. and Gwendolyn J. Boyle (the Boyles), owners of the property denominated 1753 Dutch Ridge Road, both in Wayne Township, Lawrence County, Pennsylvania, have an easement in a 50-foot strip of land that lies between their properties to which Carnovale claims ownership.  Because the trial court correctly found that they had easement interest in that strip of land, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The salient facts are not in dispute. The Ioanillis and the Boyles' lots were created on December 29, 1995, when Richard Eyles, Marie Eyles and George O. Sewall III (Subdividers) recorded the Dutch Ridge Manor Plan of Lots Phase I that subdivided a large parcel of property that they owned into eight lots fronting on Dutch Ridge Road. On the recorded subdivision plan between Lots Four and Five was a 50-foot strip of land that was "reserved for future use," with markings on the Phase I Plan indicating that it would be used as access to the rest of the property that Subdividers owned. On the same date Subdividers recorded the Phase I Plan, they recorded a Declaration of Covenants and Use Restrictions. Paragraph 8 of that document specifically declares future development of the subdivision, *i.e.*, Phases II and III, "shall be considered as a single Plan." (Trial Exhibit 6A).

In 1996, the Ioanillis purchased Lot Four and the Boyles purchased Lot Five and built their homes. The Ioanillis' deed references the 50-foot strip as "reserved for future use" while the Boyle deed described it as a "50-foot right-of-way." A brochure prepared by Century 21, the agency selling the lots in the subdivision, stated that the 50-foot strip was a right-of-way. Both parties purchased their vacant lots from the Subdividers with the understanding that each was to be a corner lot. Their respective deeds, among other things, provide that the conveyance is "UNDER and SUBJECT to restrictions as appear of record . . ." (R. 176a & 181a (emphasis in original)).

When the Ioanillis built their home, the garage entrance faced the 50-foot strip of land which is used to access Dutch Ridge Road. The Boyles constructed a swimming pool at the rear of their property and use the right-of-way to access and fill the pool as well as to service their mound/sewage disposal system located at the rear of their property. (R. 80a).

In 2000, the Subdividers added to the Plan by subdividing 44.42 acres of their property into Dutch Ridge Manor Plan of Lots Phases II and III. It was a 17-lot subdivision laid out around a cul-de-sac that marked the 50-foot strip of land on the recorded Phase I subdivision Plan as "reserved for future use," now as "Scenic Drive 50' R/W." The right-of-way provides access to the cul-de-sac from Dutch Ridge Road. A note contained on the recorded Phase II and III Subdivision Plan provides that the Subdividers "do hereby dedicate the streets, rights of ways and all improvements shown hereon to the public forever." No lot from these two phases was ever sold.

In 2019, Carnovale purchased all the land in the Dutch Ridge Manor Plan of Lots Phases II and III. His deed states that his land is taken "under and subject to the declaration for Covenants for Phase 2 and Phase 3 Dutch Ridge Manor Plan of Lots." Carnovale subsequently conveyed a sanitary easement to Mark Camerot by instrument dated September 11, 2019 (two days before he owned the property) and recorded on September 18, 2019 (five days after he owned the property) in the "Scenic Drive 50' right of way" identified on the survey map for the Camerot Deed I Plan. (Trial Exhibit 17).

Subsequent to his purchase, because each lot was being taxed as a separate parcel, Carnovale filed with Wayne Township a new Plan of Subdivision that made his property a single lot. After Wayne Township gave its approval, the Dutch Ridge Manor Plan of Lots Phases II and III was vacated and the new single lot plan was recorded. There was, however, a specific reservation in the new plan that the 50-foot right-of-way was not vacated. (R. 123).

Shortly after purchasing the property, Carnovale erected a fence and placed other obstacles that precluded the Ioanillis and the Boyles from using the 50-foot right-of-way to access their property. The Ioanillis and the Boyles then brought an action for declaratory judgment and injunctive relief (Action) seeking a declaration that they had an easement over the right-of-way as well as injunctive relief seeking removal of the fence and other obstacles blocking their access. In making their claim for declaratory relief, they argued that they had an easement on several alternative bases: they had an "easement of access"[1] because the 50-feet easement was in the subdivision filings; and

_____

[1] An easement of access exists "when lots are sold as part of a recorded subdivision plan on which a street has been plotted by the grantor, the purchasers acquire property rights in the use of the street." **Starling v. Lake Meade Property Owners Ass'n, Inc. (Starling II)**, 162 A.3d 327, 337–38 (Pa. 2017) (citations and internal quotation marks omitted). "Specifically, all purchasers of property in a subdivision acquire an easement over all platted roads in the subdivision plan." **Starling v. Lake Meade Property Owners Ass'n, Inc. (Starling I)**, 121 A.3d 1021, 1028 (Pa. Super. 2015), *rev'd on other grounds,* **Starling II**, 162 A.3d 327.

if they did not have an easement of access they had "an easement by necessity"[2] because of the difficulty they would have in accessing and enjoying their properties without use of the 50-foot strip as well as a prescriptive easement[3] because they had been using the easement for 21 years.

Carnovale then filed preliminary objections in the nature of a demurrer contending that the Ioanillis and the Boyles failed to set forth a cause of action, as well as that their Action was procedurally defective because it did not plead its claims for relief in separate counts as required by Rule of Civil Procedure 1020(a).[4]  While the trial court overruled the demurrer, it granted the procedural preliminary objection with leave to amend.  After the Action was amended, Carnovale filed an answer and new matter claiming that:

---

[2] An easement by necessity over the land of another is always of strict necessity but does not require a party to prove utter impossibility of alternative access.  **See Bartkowski v. Ramondo**, 219 A.3d 1083, 1092-96 (Pa. 2019).  "Where it is manifestly impracticable, even though theoretically possible, to create ingress and egress across one's own property, the landowner may establish that a right-of-way over a neighboring property is 'strictly necessary' in the legal sense."  **Id.** at 1094.

[3] "A prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use for a period of twenty-one (21) years. . . .  Permissive use defeats a claim of a prescriptive easement."  **Village of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.**, 103 A.3d 814, 822 (Pa. Super. 2014) (citations and quotation marks omitted).

[4] The Rule provides that "[t]he plaintiff may state in the complaint more than one cause of action cognizable in a civil action against the same defendant. Each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief."  Pa. R.C.P. 1020(a).

• there was no easement of access because after the Ioanillis and Boyles purchased their properties based on Dutch Ridge Manor Plan No. 1, the subsequent Dutch Ridge Manor Plan Nos. 2 & 3 had designated the 50' strip of land as a "Scenic Drive," notwithstanding the fact that those Plans were never developed and were vacated by Wayne Township.

• there could be no prescriptive easement because the easement sought ran through unenclosed woodlands.[5]

• they have failed to establish an easement of necessity as a matter of law because both properties front on Dutch Ridge Road and they cannot claim the right to use Carnovale's property just because they decided it was more convenient to utilize the right-of-way rather than traversing over their own properties.

The parties ultimately proceeded to a bench trial and offered testimony and exhibits regarding the subdivision and deed status and their use of the 50-foot right-of-way. The trial court held that the Ioanillis and the Boyles had established that they had an easement in the 50-foot parcel under various theories and granted the requested injunction ordering Carnovale to remove the fence and other obstacles. In the accompanying memorandum, which thoroughly discussed the law regarding each basis on which the Ioanillis and the Boyles advanced that they had an easement, it found that:

_____

[5] An easement by prescription cannot be obtained if it located in unenclosed woodlands:

No right of way shall be hereafter acquired by user, where such way passes through uninclosed [sic] woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

68 P.S. § 411.

- the Ioanillis and the Boyles had an easement of access over the 50-foot strip of land, which was created as a "paper street" and labeled a "reservation for future use" in the Phase I Plan of Lots, because it was intended to be a road upon which further subdivisions would be accessed and the subsequent vacation Phases II and III did not alter that easement.

- there was a prescriptive easement because the Ioanillis and the Boyles had continuously used the right-of-way to access their properties for 21 years and the unenclosed woodlands doctrine did not preclude the easement because the 50-foot parcel consisted of grass and sparse shrubbery.

- the Boyles established an easement of necessity to maintain their sand mound/sewage disposal system and pool and related facilities and alternate access was impractical because vehicular traffic could damage the underground pipes and inhibit their use in an appropriate manner.

- the Ioanillis had established an easement by necessity because constructing an alternate driveway to their garage would be difficult and require a very sharp and concise turn from the Ioanilli property into the garage itself.

Carnovale timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

On appeal, Carnovale raises the same contentions that he raised below, claiming that that the trial court erred by finding that there was an easement of access, a prescriptive easement and an easement of necessity. Because we find it determinative, we need to only address directly whether the trial court correctly found that there was an easement of access.

As the trial court stated, the law in this area is settled. When property is subdivided into an official plan, two distinct easement rights are created: one of a private character, for the landowners of the subdivision, and one of

a public nature, which anyone can use and enjoy. *Mannherz v. Edgely Developers, Inc.*, 52 Pa. D.&C. 2d 510, 516 (Pa. Com. Pl. Bucks, Oct. 24, 1969). "[W]hen lots are sold as part of a recorded subdivision plan on which a street has been plotted by the grantor, the purchasers acquire property rights in the use of the street." *Starling v. Lake Meade Property Owners Ass'n, Inc. (Starling II)*, 162 A.3d 327, 337-38 (Pa. 2017) (citation omitted).

Unlike those of a public nature, those private easements over "paper streets," *i.e.*, those streets which were recorded and dedicated but never opened by the municipality, are "private contractual rights resulting as a legal consequence from the implied covenants under which the grantees purchased, and as such are not affected by the failure of the municipalities to act upon the dedication." *Rahn v. Hess*, 106 A.2d 461, 464 (Pa. 1954). Specifically, all purchasers of property in a subdivision acquire an easement over all platted roads in the subdivision plan. *Starling v. Lake Meade Property Owners Association, Inc. (Starling I)*, 121 A.3d 1021, 1028 (Pa. Super. 2015), *rev'd on other grounds, Starling II*, *supra*.

When lots are sold according to a subdivision plan on which a street has been plotted by the grantor, the purchasers acquire property rights in the use of the street. "Such a right is sometimes called an 'easement of access' which means the right of ingress and egress to and from the premises of the lot owners. It is a property right appurtenant to the land which cannot be

impaired or taken away without compensation." ***Chambersburg Shoe Mfg. Co. v. Cumberland Valley R.R.***, 87 A. 968, 970 (Pa. 1913).

In this case, the trial court recognized the notation on the Dutch Ridge Manor Plan Phase I that the 50-foot strip is "reserved for future use" was insufficient to establish that it was being dedicated as a street. However, the Boyles' deed shows that the 50-foot strip was a right-of-way, the Phase I subdivision has markings denoting its future use as a right-of-way, and Subdividers' marketing material shows that it was intended to be a right-of-way. All of this evidence established that the parcel was intended to be used as a road. More importantly, in Dutch Ridge Manor Plan Phases II & III, the 50-foot parcel was labeled as "Scenic Drive 50' R/W" to be used as part of the street system for access to Dutch Ridge Road. There is also a note on the Plan that the Subdividers "do hereby dedicate the streets, rights of ways and all improvements shown hereon to the public forever."

Nevertheless, Carnovale claims that the Ioanillis and the Boyles do not have an easement of access because they purchased their properties based on Dutch Ridge Manor Plan Phase I. Because the Dutch Ridge Manor Plan Nos. II & III were recorded years after the Ioanillis and the Boyles bought their lots, were never developed and were vacated by Wayne Township, Carnovale argues that the subsequent plans did not create any right in the 50-foot strip of land for the Ioanillis and the Boyles.

This argument ignores that the Subdividers recorded a Declaration of Covenants and Use Restrictions concurrently with Phase I of the Plan which provides in Paragraph 8 that any addition to the Plan shall be considered as a single plan. In essence, by making it a single plan, the Ioanillis and the Boyles had an easement of access in the roads in the entire Dutch Manor Plan of Lots, including those Phases subsequent to their deeds.

As to Carnovale's argument that Phases II & III were vacated, that vacation only relinquishes the public rights to the street and does not affect any private rights. *Chambersburg Shoe Mfg. Co.*, *supra*. In any event, when those Phases were vacated, Wayne Township did not vacate the dedication of the subject 50-foot parcel. Accordingly, the trial court properly held that the Ioanillis and the Boyles had easement by access in the 50-foot strip of land between their properties.

The trial court also properly granted injunctive relief restricting Carnovale from obstructing the right-of-way in any manner because once it was found that easement existed, the Ioanillis and the Boyles' rights as easement holders entitle them to use the easement for all ordinary purposes in a reasonable manner. *Lease v. Doll*, 403 A.2d 558, 564 (Pa. 1979).

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/12/2023