J-A28038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KATIE DAVENPORT AND MATTHEW HANSEN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 485 MDA 2025 |
| PHILIP N. HAWK AND CANDACE A. SMITH | : | |

Appeal from the Judgment Entered March 31, 2025
In the Court of Common Pleas of Centre County Civil Division at No(s):
2023-0093

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                **FILED: JANUARY 28, 2026**

Katie Davenport and Matthew Hansen (collectively, "Plaintiffs") appeal from the judgment entered in favor of Philip N. Hawk ("Hawk") and Candace A. Smith (collectively, "Defendants"), which established an easement benefiting Defendants on Plaintiffs' property.  We affirm.

We glean the following background from the trial court's findings of fact, which the parties do not contest, as well as the relevant planning documents. Plaintiffs and Defendants own adjoining properties in the Nittany Orchards development in College Township, Centre County.  **See** Trial Court Opinion, 3/25/25, Findings of Fact ("F.F."), at ¶¶ 1-4.  Plaintiffs own and reside at the property located at 400 Baldwin Street, which appears as lot 25 on the development planning documents ("Lot 25" or "Plaintiffs' Property").  **See id**., F.F., at ¶ 1.  The developer of Nittany Orchards created Lot 25 in the Phase

VII Final Subdivision Plan, dated July 23, 1990 and recorded on October 29, 1990 ("Phase 7 Plan"). *See id*., F.F., at ¶¶ 1, 6. We set forth below the relevant section of the Phase 7 Plan. *See* Exhibit P-5, at 2.



As shown above, the Phase 7 Plan depicts a thirty-foot-wide access and utility easement running along the western and southern boundary of Lot 25 and a twenty-foot-wide access easement along the property's eastern boundary ("Easement"). *See id*.; *see also* Trial Court Opinion, 3/25/25, F.F., at ¶ 14. A note on the Phase 7 Plan states that "[t]he lands of Nuss and Weaver have been provided with a 30' access and utility easement and a 20' access easement." Exhibit P-5, at 1. The "lands of Nuss and Weaver" refer to two properties abutting Lot 25 to the east and northeast that "were created prior to the development of Nittany Orchards and are not part of that

subdivision." Trial Court Opinion, 3/25/25, F.F., at ¶ 20. As these two properties lack street frontage, "Nuss and Weaver . . . have, in accordance with the Phase 7 Plan, used the Easement to access the public roadway, Baldwin Drive."[1] *Id*., F.F., at ¶ 23.

Plaintiffs purchased Lot 25 in 2018. *See id*., F.F., at ¶ 5. "The deeds in . . . Plaintiffs' chain of title, including the deed conveying the property to Plaintiffs, reference the Phase 7 Plan." *Id*., F.F., at ¶ 7. Furthermore, "[e]ach of the deeds in . . . Plaintiffs' chain of title . . . contain a clause that states 'Lot No. 25 is subject to . . . a 20' wide access easement along its easterly boundary and a 30' wide access and utility easement along its westerly and southerly boundary.'" *Id*., F.F., at ¶ 11 (*quoting* Exhibit P-1, at 2).

In 1991, Defendants purchased two parcels in the Nittany Orchards development, lot 111 ("Lower Property") and lot 112 ("Upper Property"). *See id*., F.F., at ¶¶ 2-3, 8. The developer of Nittany Orchards created the Upper Property and Lower Property in the Phase IX Final Subdivision Plan, dated August 20, 1990 and recorded October 26, 1990 ("Phase 9 Plan"). *See id*., F.F., at ¶ 9. We set forth below the relevant section of the Phase 9 Plan. *See* Exhibit P-4.

---

[1] It is not apparent on the record who currently owns the Nuss and Weaver properties. For ease of reference, we use "Nuss" and "Weaver" to identify the current owners of those properties.



As shown above, the Phase 9 Plan depicts Lot 25 and other portions of the Phase 7 development and contains a note referencing the "30' Access & Utility Easement" on Lot 25. *See id*. However, the Phase 9 Plan does not further "describe or limit the use of the Easement where it crosses over . . . Plaintiffs' [P]roperty." *See* Trial Court Opinion, 3/25/25, F.F., at ¶ 16; *see also* Exhibit P-4. "The [d]eeds to Defendants' properties reference the Phase 9 Plan." Trial Court Opinion, 3/25/25, F.F., at ¶ 10.

- 4 -

Defendants reside in a renovated farmhouse on the Lower Property, which has access to a public street, Boalsburg Road, and a street address of 126 Evey Lane. *See id*., F.F., at ¶¶ 2, 12, 31. The Upper Property, which is uphill from the Lower Property, lacks street frontage and a street address. *See id*., F.F., at ¶¶ 3, 13, 34. Part of the northern boundary of the Upper Property abuts the southern portion of Lot 25 encumbered with the Easement. *See id*., F.F., at ¶ 15; *see also* Exhibit P-4.

Defendant Hawk purchased the Upper Property "as the location for his stone masonry business," and he uses "a building located on the southern portion of the Upper Property as the site for his . . . business and stone yard." Trial Court Opinion, 3/25/25, F.F., at ¶ 32. Hawk accesses the business site on the southern portion of the Upper Property via a gravel drive ("Gravel Drive"), that preexisted the Nittany Orchards development. *Id*., F.F., at ¶ 38. The Gravel Drive, which is depicted on the Phase 9 Plan, originally provided the Nuss and Weaver properties access to Boalsburg Road and crossed the Lower Property, the Upper Property, Lot 25, and two other properties. *See id*., F.F., at ¶¶ 21-22; *see also* Exhibit P-4. In 1991, the owners of the Nuss and Weaver properties executed releases to extinguish their easement to use the Gravel Drive. *See* Trial Court Opinion, 3/25/25, F.F., at ¶¶ 21-22.

While Defendant Hawk has driven "on an almost daily basis" from the Lower Property "to the southern portions of the Upper Property where his business is located," he cannot access "the northern portion of the Upper Property because of the topography and boggy conditions that exist in the

middle of" that parcel. *Id*., F.F., at ¶¶ 35-38. Therefore, Hawk "has entered onto the Upper Property from Baldwin Street by way of the Easement approximately one time per year since he purchased the Upper Property." *Id*., F.F., at ¶ 33. In 2011, Defendants obtained approval from College Township to consolidate their two lots, but they did not follow through with the consolidation plan. *See id*., F.F., at ¶¶ 27-28. Hawk testified at trial that he contemplated developing the Upper Property "and did not want the traffic to traverse" the Lower Property and instead to "proceed over the Easement through the Plaintiffs' [P]roperty." *Id*., F.F., at ¶ 44; *see also* N.T., 8/22/24, at 84, 96.

In 2009, the then-owners of Plaintiffs' Property filed an action in the trial court against Nuss and Weaver "seeking to clarify the rights and responsibilities of the parties regarding upkeep and maintenance of the Easement" ("Prior Easement Litigation"). Trial Court Opinion, 3/25/25, F.F., at ¶ 24. The parties settled the dispute, and the trial court entered a consent order on November 10, 2010 ("Consent Order"), which declared the right of Nuss and Weaver to use the Easement. *See id*., F.F., at ¶ 26; Exhibit P-9, at ¶¶ 1-3. With respect to maintenance of the Easement, the Consent Order provided that: the owners of Lot 25 and their successors shall "pay 100% of the cost of maintenance and repairs for the paved portion of the [E]asement located to the southwest of" the residence on Lot 25; and Nuss and Weaver and their successors shall "pay 100% of the cost of maintenance and repairs for the unpaved portion of the [E]asement located to the southeast of" the

residence on Lot 25. Exhibit P-9, at ¶¶ 7-8. Defendants were not a party to the Prior Easement Litigation. *See* Trial Court Opinion, 3/25/25, F.F., at ¶ 25.

In 2022, Plaintiffs, for the first time, observed Hawk traveling across the Easement to access the Upper Property. *See id*., F.F., at ¶¶ 41-42. Plaintiffs filed a complaint on January 10, 2023, seeking a declaration that Defendants had no right to use the Easement to access the Upper Property. Defendants filed an answer, new matter, and counterclaim in the nature of declaratory judgment to establish their right of access via the Easement. Neither Plaintiffs nor Defendants sought to join Nuss and Weaver.

This matter proceeded to a non-jury trial on August 22, 2024. On January 2, 2025, the trial court issued an opinion and order: denying relief to Plaintiffs; granting relief on Defendants' counterclaim; and finding, pursuant to the doctrine of implied easements by map or plat, that Defendants own an easement appurtenant over the Easement from Baldwin Street to the boundary of the Upper Property. The court further provided that "Defendants shall equally share the costs of maintenance and upkeep of the Easement with Plaintiffs and other property owners with rights to the Easement." Order, 1/2/25, at ¶ 5.

Plaintiffs filed a motion for post-trial relief, in which they argued, *inter alia*, that the trial court erred in granting relief to Defendants as Nuss and Weaver were necessary and indispensable parties based on their maintenance obligations over the Easement under the Consent Order. On March 25, 2025, the trial court issued an amended opinion and order, awarding the same relief

regarding the use of the Easement but altering its ruling with respect to maintenance obligations. Specifically, the amended order stated: "Defendants shall share in the costs of maintenance and upkeep of the Easement as required by law or subsequent agreement of the parties or [o]rder of [c]ourt." Order, 3/25/25, at ¶ 7. On March 31, 2025, the court entered judgment in favor of Defendants.

Plaintiffs filed a timely notice of appeal from the judgment. Both Plaintiffs and the trial court have complied with Pa.R.A.P. 1925.

Plaintiffs raise the following issues on appeal:

1. Whether the trial court lacked jurisdiction to issue an order, which increased maintenance obligations relating to an easement for parties who were not part of this case, because such an order was rendered in the absence of necessary and/or indispensable parties[?]

2. Whether property owners, who previously litigated a case that established certain maintenance obligations relating to an easement, are necessary and/or indispensable parties to litigation that changed the prior order and increased those property owners' maintenance obligations relative to the easement[?]

3. When a developer writes into a subdivision plan that an easement is available for only two property owners, can a third property owner establish use of the easement by implied easement, in direct contravention of the easement's express limitation?

4. Can a property owner establish an implied easement based on a map or plat, when the map or plat at issue is not part of the servient tenement's chain of title — and, therefore, the owners of the servient tenement never had notice of any potential right to use the easement by the party asserting the easement?

5. Under the circumstances presented in this case, did the trial court properly grant the use of an implied easement over [Plaintiffs'] property[?]

Plaintiffs' Brief at 10-11 (suggested answers omitted).[2]

In their first two issues, Plaintiffs argue that the trial court lacked subject matter jurisdiction over Defendants' counterclaim, as Nuss and Weaver were necessary and indispensable parties to litigation concerning Defendants' rights and obligations with respect to the Easement.

"Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction." ***Orman v. Mortgage I.T.***, 118 A.3d 403, 406 (Pa. Super. 2015). Whether a court has subject matter jurisdiction presents a question of law as to which our standard of review is *de novo*, and our scope of review is plenary. ***See id***. "Failure to join an indispensable party goes absolutely to the court's jurisdiction," and therefore courts may raise the issue *sua sponte*. ***See id***.

> A party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. This Court has consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation:

_____

[2] We note that, while Plaintiffs present five issues in their statement of questions, they argue only two discrete issues in the argument section of their brief. We remind Plaintiffs of the mandate of Rule of Appellate Procedure 2119(a) that appellants shall divide the argument sections of their briefs "into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a).

> 1. Do absent parties have a right or an interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?
>
> In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.

*Young v. Lippl*, 251 A.3d 405, 413 (Pa. Super. 2021) (citation and brackets omitted). In undertaking the inquiry as to whether a party is indispensable, "the nature of the claim and the relief sought must be considered." *Hendricks v. Hendricks*, 175 A.3d 323, 329 (Pa. Super. 2017).

Furthermore, under the Declaratory Judgments Act,[3] "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." 42 Pa.C.S.A. § 7540(a). However, this provision is subject to the "limiting principle[]" that "where the interest involved is indirect or incidental, joinder may not be required." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 582 (Pa. 2003).

Plaintiffs argue that Nuss and Weaver had an essential interest in the merits of the present litigation because the trial court "add[ed] an additional

_____

[3] *See* 42 Pa.C.S.A. §§ 7531-7541.

- 10 -

set of property owners to the list of" owners who can use the Easement. Plaintiffs' Brief at 33. Citing Hawk's testimony that Defendants intended to develop the Upper Property, Plaintiffs emphasize that not only did the trial court expand the use of the Easement, but the court imposed a greater burden on the Easement from "an additional property that is going to be developed." *Id*. at 35. Plaintiffs assert that the "parties in the [Prior Easement Litigation] fought hard over who would be able to use the [E]asement; opening the [E]asement to new individuals changes those rights." *Id*.

Plaintiffs focus their arguments on the effect on Nuss' and Weaver's maintenance responsibilities following the trial court's ruling. As noted above, the Consent Order provided Plaintiffs shall pay all of the costs associated with maintenance of the paved portion of the Easement, and Nuss and Weaver pay all of the costs to maintain the unpaved portion of the Easement. *See* Exhibit P-9, at ¶¶ 7-8. With respect to maintenance, the March 25, 2025 order that is the subject of this appeal states that "Defendants shall share in the costs of maintenance and upkeep of the Easement as required by law or subsequent agreement of the parties or [o]rder of [c]ourt." Order, 3/25/25, at ¶ 7.

Plaintiffs argue that the March 25, 2025 order "undid" the Consent Order and left unresolved the task "to determine what is 'required by law,' come to a new 'agreement of the parties,' or litigate this matter and obtain a new '[o]rder of [c]ourt.'" Plaintiffs' Reply Brief at 5, 8 (*quoting* Order, 3/25/25, at ¶ 7). Plaintiffs assert that "[t]here is no precedent" for the trial court's "assum[ption] that the users of th[e E]asement will be happy litigating or

working out a new agreement to maintain the [E]asement." Plaintiffs' Brief at 35. Rather, Plaintiffs contend that the fact that the court imposed a new, unresolved burden on Nuss and Weaver "is a clear indication that those parties should have been included in this action, and their failure to be included was in error." *Id*. at 35-36.

The trial court found that "the rights of Nuss and Weaver as non-exclusive users of the Easement are not essential to the merits of this case." Trial Court Opinion, 6/20/25, at 9. The court noted that the "issue in the present action is whether Defendants have the right to use the Easement alongside any other property owners who also have the right to use it." *Id*. Therefore, "Nuss['] and Weaver's right of access is not threatened by this litigation, as they maintain their usage rights regardless of the outcome of this case." *Id*.

With respect to maintenance, the trial court observed that Defendants have a common law duty to keep the Easement in good repair, which exists independent of the prior agreement between Plaintiffs, Nuss, and Weaver memorialized in the Consent Order. *See id*. at 9-10 (*citing **Mscisz v. Russell***, 487 A.2d 839, 840 (Pa. Super. 1984), which holds, "As a general rule, where an easement is used and enjoyed for the benefit of a dominant estate, it is the owner of the dominant estate who is under obligation to keep the easement in good repair"). The court explained:

> To further ensure that no decision was made in this case that affected the rights of Nuss and Weaver, the [c]ourt decided not to address maintenance responsibilities [in the March 25, 2025

order] other than to confirm the obligations Defendants have by operation of law. Should issues arise in the future regarding maintenance of the Easement, the holders of easement rights have the opportunity for redress by filing the appropriate action with th[e trial c]ourt, just as occurred with the [Prior Easement Litigation].

*Id*. at 11. The court therefore concluded that, because "no redress [was] sought against [Nuss and Weaver], and their rights [we]re not prejudiced by" the March 25, 2025 order, they "are not indispensable parties to the instant litigation." *Id*. at 10.

Based on our review, we conclude that the trial court did not err by granting relief to Defendants absent the joinder of Nuss and Weaver as parties. *See Orman*, 118 A.3d at 406. As the trial court noted, Nuss' and Weaver's have a non-exclusive right to use the Easement to access their properties. Therefore, the trial court's award of a right of access to an additional set of users, Defendants, did not impact Nuss' and Weaver's existing interests in the Easement. We stress that Nuss and Weaver are owners of the ***dominant*** tenements of the Easement, and the court's ruling did not burden their rights to enjoy their own properties. *See Columbia Gas Transmission Corp. v. Diamond Fuel Co.*, 346 A.2d 788, 789 (Pa. 1975) (holding that "the fee simple owner of the ***servient*** tenement is an indispensable party" in "any litigation involving the easement" that will adversely affect the owner's "right to the use and enjoyment of his property") (emphasis added).

We further determine that the trial court's ruling concerning the maintenance of the Easement did not prejudice Nuss' and Weaver's rights such that they were indispensable in this case. ***See id***. As noted above, Nuss and Weaver are only responsible for the maintenance of the unpaved portion of the Easement on the southeast part of Lot 25. ***See*** Exhibit P-9, at ¶ 8. It is unclear on the present record whether Defendants will need to travel over the unpaved portion of the Easement to access the Upper Property or if their use will be confined to the paved portion of the Easement closer to Baldwin Drive, which Plaintiffs have full responsibility to maintain. Even assuming Defendants will utilize the unpaved portion, however, we agree with the trial court that its March 25, 2025 order did not modify Nuss' and Weaver's maintenance responsibilities under the Consent Order. Nuss and Weaver continue to bear the primary responsibility to maintain the unpaved portion of the Easement. The trial court simply added additional users — Defendants — to share in the maintenance costs as the common law requires. ***See Mscisz***, 487 A.2d at 840.

While the trial court's grant of an Easement right to Defendants may require Nuss and Weaver to participate in future litigation regarding maintenance of the Easement if the parties cannot amicably resolve the issue, this fact does not render Nuss and Weaver indispensable parties in the present litigation. We note that neither Plaintiffs nor Defendants raised the issue of maintenance of the Easement in their pleadings, and they did not present evidence regarding maintenance costs at the non-jury trial. Therefore, as the

maintenance issue was not squarely before the trial court, we conclude that Nuss' and Weaver's interests were only "indirect or incidental" to the merits of this case. *City of Philadelphia*, 838 A.2d at 582. The trial court thus did not infringe on their due process rights by granting Defendants the right to use the Easement. *See Young*, 251 A.3d at 413. Defendants' first two issues merit no relief.

In their final three issues, Plaintiffs challenge the trial court's declaration of Defendants' right to use the Easement on the merits. Plaintiffs argue that the court misapplied the doctrine of an implied easement by reference to a map or plat, as the Phase 7 Plan that established the Easement solely created a right of access in favor of Nuss and Weaver, not Defendants.

We apply the following scope and standard of review when considering a challenge to a non-jury verdict:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review[,] the appellate court must consider the evidence in the light most favorable to the verdict winner . . . . Our scope of review regarding questions of law is plenary.

*Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 956 (Pa. Super. 2023) (citation omitted). "It is within the trial court's exclusive province to determine the weight to be assigned the testimony of witnesses; the court is free to believe all, part, or none of the evidence presented." *Zurick v. Stella Cadente Investments, LLC*, 342 A.3d 704, 708 (Pa. Super. 2025).

An easement is "an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *In re Borough of Downingtown*, 161 A.3d 844, 877 (Pa. 2017) (citation and emphasis omitted). "A party asserting the existence of an easement must demonstrate each element of the easement by clear and positive proof." *Zurick*, 342 A.3d at 708. "An easement may be created by express agreement[,] implication, necessity, or prescription." *Morning Call, Inc. v. Bell Atl.-Pennsylvania, Inc.*, 761 A.2d 139, 142 (Pa. Super. 2000).

"An easement by reference to a map or plat[] is . . . a particular type of implied easement controlled by its own principles."[4] *Cunningham v. Cronin*, 206 A.3d 569, 572 (Pa. Super. 2019) (citation omitted). "References to a plan contained in deeds make the plan a part of the deed or conveyance and constitute a dedication of the streets, alleys and ways shown on the plan, to the use of the purchasers as public ways." *Landis*, 222 A.3d at 35 (citation and emphasis omitted). In such a case, there exists "an implied covenant that there is a way corresponding with the one described in the deed, [and]

_____

[4] In addition to an implied easement by map or plat, Pennsylvania courts employ two other tests to determine whether an implied easement exists: the Restatement test and the common-law test for an easement created upon the severance of the unity of ownership in an estate. *See Potis v. Coon*, 496 A.2d 1188, 1191-92 & n.6, 8 (Pa. Super. 1985); *see also Landis v. Wilt*, 222 A.3d 28, 35 (Pa. Super. 2019) (noting that "the usual criteria for establishment of an implied easement 'do not apply to an easement by reference to a map or plat[]'") (*quoting Potis*, 496 A.2d at 1191). Neither of these alternate tests are at issue in this appeal.

so far as the grantor is concerned it shall be continued and . . . the grantee, his heirs and assigns, shall have the benefit of it." **Cunningham**, 206 A.3d at 573 (citation omitted).

Thus, "where a deed incorporates a plan which makes specific reference to a right of way, an easement is implied over that property." **Sides v. Cleland**, 648 A.2d 793, 795 (Pa. Super. 1994). Furthermore, to the extent there is ambiguity in an easement set forth in a plan, a court must interpret the deed according to the intentions of the grantor of the land. **See id**. at 795 & n.4.

Plaintiffs argue that a review of the Phase 7 Plan — which is incorporated into the deeds in their chain of title — makes clear that Defendants lack any interest in the Easement. As Plaintiffs note, the Phase 7 Plan does not reference Defendants' properties but states only that "[t]he **lands of Nuss and Weaver** have been provided with a 30' access and utility easement and a 20' access easement." Exhibit P-5, at 1 (emphasis added). Plaintiffs assert that the developer's intent was crucial and here it is clearly evident that only Nuss and Weaver obtained access rights over Lot 25. Plaintiffs contend that under the principle of *expressio unius est exclusio alterius*, the trial court should have strictly construed the Easement to benefit only those parties expressly referenced in the planning documents, Nuss and Weaver. **See** Black's Law Dictionary (12th ed. 2024) (defining *expressio unius est exclusio alterius* as "[a] canon of construction holding that to express or include one thing implies the exclusion of the other"); **see also Kennedy v. Consol**

*Energy Inc.*, 116 A.3d 626, 634 (Pa. Super. 2015) (stating, "In interpreting deeds, the principle *expressio unius est exclusio alterius* applies, meaning the express mention of one thing excludes all others").

Plaintiffs argue that the trial court's reliance on the reference to the Easement in the Phase 9 Plan was erroneous for four reasons. First, Plaintiffs note that the Defendants' deed only references the Phase 9 Plan while Plaintiffs' deed only references the Phase 7 Plan. Plaintiffs aver that it was error by the trial court "to (1) take language appearing solely in [Defendants'] chain of title and (2) use that language to add a restriction to [Plaintiffs'] chain of title." Plaintiffs' Brief at 48.

Second, Plaintiffs contend that the trial court should not have considered the Phase 9 Plan — which was dated August 20, 1990 and recorded October 26, 1990 — because it was dated **after** the Phase 7 Plan — which was dated July 23, 1990 and recorded October 29, 1990. **See** Trial Court Opinion, 3/25/25, F.F., at ¶¶ 6, 9. Plaintiffs argue that the Phase 9 Plan's "later-in-time addition to the subdivision" could not create an easement on Lot 25 because an implied easement can only arise "at the time at which ownership of the two parcels in question first became separated." Plaintiffs' Reply Brief at 12 (citation omitted).

Next, Plaintiffs argue that, even if the trial court properly considered the Phase 9 Plan, it was insufficient to establish a right to use the Easement. Plaintiffs note that the Phase 9 Plan references a "30' Access & Utility Easement" on Lot 25, without any indication that it benefits any party. Exhibit

P-4. Plaintiffs contend that if the developers of Nittany Orchards had intended to establish a right of easement in the owners of the Upper Property, the plan would have clearly so stated.

Finally, Plaintiffs reason that the reference to the Gravel Drive on the Phase 9 Plan shows that Defendants lack any interest in the Easement. Plaintiffs note that the Gravel Drive originally provided access to the Lower Property, the Upper Property, and the Nuss and Weaver properties, but Nuss and Weaver relinquished that right at the time of the development of Nittany Orchards. *See* Trial Court Opinion, 3/25/25, F.F., at ¶¶ 21-22; *see also* Exhibit P-4. Plaintiffs maintain that "the clear implication [of the relinquishment was] that the Nuss and Weaver properties would use the [E]asement, and [Defendants] would use the . . . Gravel Drive." Plaintiffs' Brief at 49.

The trial court found that Defendants have an implied easement by reference to a map or plat because the deeds for both the Upper Property and Lower Property reference the Phase 9 Plan, and that plan therefore "became part of those deeds." Trial Court Opinion, 6/20/25, at 17. The court noted that the Phase 9 Plan depicts a "30' Access & Utility Easement," which runs from Baldwin Street, across Plaintiffs' Property, to the Upper Property. *Id*. (*quoting* Exhibit P-4). The court concluded that "because Defendants' deeds mention the Phase 9 Plan which specifically designates the Easement connecting Baldwin Street to the Upper Property, Defendants have an easement by implication." *Id*. at 18. The court emphasized that the Plaintiff's

deed also references the Easement without any limitation on which abutting property owners may use the Easement. **See id**. at 20 (*citing* Exhibit P-1, at 2).

The trial court found no merit to Plaintiffs' argument that the court erred by looking at the Phase 9 Plan incorporated into Defendants' deeds, rather than the Phase 7 Plan incorporated into Plaintiffs' deed. The court noted that, although dated after the Phase 7 Plan, the Phase 9 Plan "was recorded first, depicts the Easement, and does not contain any language stating that the Easement is for the exclusive use of Nuss and Weaver." **Id**. The court found that the reason the Phase 7 Plan indicated the Easement benefited the "lands of Nuss and Weaver" is "uncertain," speculating that this notation may have been necessary to obtain township approval after Nuss and Weaver relinquished their existing street access via the Gravel Drive. **Id**. at 18-19 (*quoting* Exhibit P-5, at 1). In any event, the court determined that "the precise reason for the inclusion of [the] note . . . on the Phase 7 Plan is immaterial with respect to Defendants' access" because the note "simply confirms" Nuss' and Weaver's right of access and "does not state that **only** Nuss and Weaver may use the Easement." **Id**. at 20 (emphasis in original).

After careful review, we conclude that the record supports the trial court's grant of an implied easement by reference to a map or plat in favor of Defendants. **See Riverview Carpet & Flooring**, 299 A.3d at 956. We need not resolve whether the Phase 7 Plan or Phase 9 Plan controls the question of whether Defendants have an easement by implication, as there is no material

difference between the plans for the purpose of our present analysis. Both plans depict a thirty-foot wide access and utility Easement running from Baldwin Drive, along the western edge of Lot 25 and then turning and running eastward along the southern boundary to the Nuss and Weaver properties. *See* Exhibit P-4; Exhibit P-5, at 2. Plaintiffs do not dispute that the Easement abuts the northern boundary of the Upper Property and thus provides direct access from the Upper Property to the public road, Baldwin Drive.

While a note on the Phase 7 Plan states that "[t]he lands of Nuss and Weaver have been provided with" the Easement, we agree with the trial court that this notation does not preclude a finding that the Easement also benefits Defendants. Exhibit P-5, at 1. As the trial court observed, the Phase 7 Plan does not contain limiting language, such as "that the Easement [was] created 'solely for use by Nuss and Weaver' or that 'only Nuss and Weaver have the right to use the Easement depicted on the plan.'" Trial Court Opinion, 6/20/25, at 19. The trial court reasonably interpreted the ambiguous references to the Easement in the Phase 7 Plan and Phase 9 Plan as establishing that it was for the benefit of all abutting property owners, not just Nuss and Weaver. *See Sides*, 648 A.2d at 796 (holding that trial court properly placed limitations on the types of vehicles and hours of use for an easement referenced in the plan as a "logging trail" and "30 foot trail"). Furthermore, the general reference to the Easement in Plaintiffs' deed — without any indication of which parties may use it —reinforces that the Easement was not solely for the benefit of Nuss and Weaver. *See* Exhibit P-

1, at 2 (stating that "Lot No. 25 is subject to . . . a 30' wide access and utility easement along its westerly and southerly boundary").

Finally, we are unpersuaded by Plaintiffs' argument that the existence of the Gravel Drive — which formerly provided access to the Nuss and Weaver properties and ran through, *inter alia*, Plaintiffs' Property, the Upper Property, and Lower Property — undermines Defendants' claim to the Easement. Plaintiffs offer nothing more than supposition in support of this claim, as they fail to identify any evidence of record showing that the developer of Nittany Orchards intended that the Gravel Drive serve as the exclusive means of egress for the Upper Property.

Here, the trial court properly relied on the Phase 7 Plan and Phase 9 Plans incorporated into Plaintiffs' and Defendants' deeds, each of which depicted the Easement running from Baldwin Street through Plaintiffs' Property to the boundary with Defendants' Upper Property. **See Potis**, 496 A.2d at 1195 (holding that property owners had easement over unopened road in subdivision where their deeds referenced subdivision plans that showed road). We discern no error of law in the court's conclusion that Defendants had the right to use the Easement to access their property as an owner of an abutting property. **See Riverview Carpet & Flooring**, 299 A.3d at 956. Therefore, no relief is due on Plaintiffs' final three issues, and we affirm the judgment in Defendants' favor.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/28/2026